# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 9, 2016 Session

## IN RE: SAMUEL D., ET AL.

### Appeal from the Circuit Court for Knox County, Fourth Circuit
### No. 128732     Gregory S. McMillan, Judge

---

### No. E2015-01449-COA-R3-JV-FILED-SEPTEMBER 19, 2016

---

This appeal arises from a finding of dependency and neglect. Ashley D. ("Mother") and Matthew M. ("Father") are the parents of Samuel D. and Uriah D. The Tennessee Department of Children's Services ("DCS") sought a finding of dependency and neglect regarding Samuel and Uriah stemming from the alleged sexual abuse by Father of their older half-siblings, Gage and Gracie, with Mother's knowledge. The Circuit Court for Knox County, Fourth Circuit ("the Trial Court") adjudicated Samuel and Uriah dependent and neglected. Mother and Father appeal. DCS concedes one of Father's issues, which we reverse. Otherwise, we affirm the judgment of the Trial Court finding Samuel and Uriah dependent and neglected.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Modified and Affirmed as so Modified; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON, II, J., joined.

Margaret Held, Knoxville, Tennessee, for the appellant, Ashley D.

James E. Corcoran, III, Knoxville, Tennessee, for the appellant, Matthew M.

Herbert H. Slatery, III, Attorney General and Reporter, and, Kathryn A. Baker, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.[1]

---

[1] Anne Greer, Guardian ad Litem for Samuel and Uriah, filed a notice of joinder with DCS's brief, adopting it by reference.

# OPINION

## Background

This appeal arises from a dependency and neglect adjudication. Mother and Father are the parents of Samuel and Uriah, born February 2012 and June 2013 respectively. Samuel and Uriah were found by the Trial Court to be dependent and neglected based upon Father's sexual abuse of their older half-siblings, Gracie and Gage, along with Mother's knowledge of the sexual abuse and her failure to do anything about it. Gracie was born in 2008 and Gage in 2004. Mother is the mother of all four children discussed here. Father is the father of Samuel and Uriah only. Samuel and Uriah are the only subjects of the dependency and neglect adjudication by the Trial Court and of this appeal, but the issues at trial and on appeal stem from Father's alleged sexual abuse of Gracie and Gage, who are subject to a separate pending adoption petition in Chancery Court. The central factual issues are, therefore, whether Father sexually abused Gracie and Gage, and whether Mother knew of the abuse and failed to act. The main conflicts at trial were over admission of the children's hearsay statements. The therapeutic methods of therapist Lori Hughes were subject to particular criticism. Mother denies having known about and covered up any sexual abuse by Father. DCS points to various statements and behaviors by the Children in support of its case, including Gage's simulating an act of self-stimulation on a straw.

In November 2015, the Trial Court entered its final judgment finding Samuel and Uriah dependent and neglected. The Trial Court's final judgment summarizes the winding procedural background of the case:

> This cause came for *de novo* trial on March 31, April 1, April 6, April 8, April 22, April 28, and August 5, 2015, before the Honorable Gregory S. McMillan, Judge of the Fourth Circuit Court of Knox County, Tennessee, upon the notice for appeal *de novo* filed by [Father] (father of Samuel . . . and Uriah . . .) and [Mother] (mother of all four children) from the July 8, 2013, order entered by the Juvenile Court of Knox County, Tennessee and the entire record. Darrell [D.], the father of Tristan Gage . . . (hereinafter Gage) and Ashlynn Grace . . . (hereinafter Gracie), did not participate in the *de novo* appeal.
>
> This case originated in Knox County Juvenile Court. On September 6, 2011, nonrelatives Gary and Tonya [C.] filed a petition for custody of Gracie and Gage [D.]. The next day, the Department of Children's Services (DCS) filed a Motion to Intervene, For Restraining Order, and To Transfer Temporary Legal Custody regarding Gracie and Gage [D.] in support of the

[C.s'] petition for custody. On January 11, 2012, the Guardian ad litem filed a motion to prohibit [Mother] and [Father] from having any contact with Gracie and Gage based upon allegations of sexual abuse by [Father]. On February 9, 2012, Samuel . . . (hereinafter Samuel) was born to [Mother] and [Father]. The Guardian ad litem filed a Motion Asserting Protective Jurisdiction and Motion for Restraining Order concerning Samuel . . . on March 26, 2012. The Court heard testimony on the Guardian ad litem's motions on April 9, 2012, and on that date removed Samuel . . . into DCS custody. On June 9, 2013, Uriah . . . (hereinafter Uriah) was born to [Mother] and [Father]. Uriah was removed into DCS custody on July 5, 2013, and, on October 29, 2013, was found to be dependent and neglected due to the prior severe abuse finding against [Father] and [Mother] regarding Gage and Gracie. Uriah continues in DCS custody.

On July 8, 2013, after multiple days of trial, Magistrate Kay H. Kaserman of the Knox County Juvenile Court found that Gage and Gracie were victims of severe child abuse due to sexual abuse perpetrated by [Father] against Gage and Gracie and by [Mother's] knowing failure to protect the children from this sexual abuse. Magistrate Kaserman further found that Samuel was dependent and neglected due to [Father's] and [Mother's] continued opiate addiction and the finding of severe child abuse toward Gage and Gracie which put Samuel at risk of harm for sexual abuse. Gage and Gracie continued in the custody of Gary and Tonya [C.] and Samuel continued in DCS custody. [Mother] and [Father] filed notices of appeal.

On April 25, 2014, after the Notice of Appeal was filed but prior to the *de novo* trial of this matter, Gary and Tonya [C.] (custodians of Gracie and Gage) filed a Petition for Adoption and Termination of Parental Rights concerning Gracie and Gage in the Chancery Court for Knox County, Tennessee. Pursuant to Tenn. Code Ann. § 36-1-116(f), exclusive jurisdiction over Gracie and Gage was assumed by the Chancery Court for Knox County, Tennessee. On April 25, 2014, the foster parents of Samuel and Uriah [D.] filed a similar but separate Petition for Adoption and Termination of Parental Rights of the children Uriah and Samuel [D.], which was dismissed by the Chancery Court on July 22, 2014. This Court proceeded to *de novo* trial for adjudication and disposition with respect to the children, Samuel [D.] and Uriah [D.].

The Trial Court made its detailed findings of fact and conclusions of law as follows:

From the testimony of these witnesses, as well as the arguments of counsel, the Court finds the following facts by clear and convincing evidence:

1. That [Gracie] disclosed that [Father] touched her vagina. Specifically, Gracie reported that "Matt Matt touched me here," inserting her finger into her vagina.

2. That [Gage] used a straw to demonstrate how [Father] touched [Gage's] penis.

3. That on at least one occasion, [Father] displayed a knife while committing the sexual abuse.

4. That on at least two occasions, [Gage] disclosed the abuse to the mother, [Mother], but she did nothing to stop the abuse.

5. That [Gracie] and [Gage] made multiple disclosures of the sexual abuse to several therapists over time, including Lori Hughes, Sabine Scoggins, Ph.D. and Diana McCoy, Ph.D., and there was no evidence of coercion or coaching by the [C.'s].

6. That the children's behaviors, night terrors, fear of bathing, and fear of closed rooms establish the trauma suffered with regard to [Gracie].

7. That [Gage's] anger, anxiety, hypervigilance, and dissociative state all establish the trauma that he has suffered.

The Court, in applying the law to the facts, finds by clear and convincing evidence:

1. That Samuel . . . and Uriah . . . are dependent and neglected children within the meaning of Tenn. Code Ann. § 37-1-102(b)(12)(G) due to sexual abuse committed by [Father], the father of Samuel . . . and Uriah . . ., against their half-siblings [Gage] and [Gracie] and due to the failure of their mother, [Mother], to protect these children from the sexual abuse by [Father].

2. That [Father] committed aggravated sexual battery under Tenn. Code Ann. § 39-13-504(4) against [Gage] and [Gracie] and rape under Tenn. Code Ann. § 39-13-503(a)(2) against [Gracie].

3. That the mother, [Mother], knowingly failed to protect the children, [Gage] and [Gracie], from the sexual abuse perpetrated by [Father].

4. That the foregoing acts committed by the mother, [Mother] and [Father], constitute severe child abuse under Tenn. Code Ann. § 37-1-102(b)(21).

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:**

1. That Samuel . . . and Uriah . . . are dependent and neglected within the meaning of the law and the temporary custody of these children is awarded to the State of Tennessee, Department of Children's Services, effective April 9, 2012, with regard to Samuel . . . and July 5, 2013, with regard to Uriah . . ., with the authority to consent to any necessary medical, surgical, hospital, educational, psychological, psychiatric, or institutional care.

2. That [Mother] and [Father] shall be allowed supervised visitation with Samuel . . . and Uriah . . ., upon their initiation, according to the rules and regulations of the Department of Children's Services; and that the Department shall **NOT** have the authority to modify visitation by relaxing or eliminating the requirement of supervision.

3. That the parents shall cooperate with their respective responsibilities on the permanency plan.

4. That pursuant to T.C.A. 37-1-166(g)(4), reasonable efforts with respect to [Mother] and [Father] shall not be required.

5. That pursuant to T.C.A. 37-1-130(c) and T.C.A. 37-1-167, these children shall not be returned to the custody or residence of [Mother] and [Father] without a finding by Court, by clear and convincing evidence, that the threat to the child's safety no longer exists and that the child will be provided a safe home free from further brutality and abuse.

6. That Attorneys James Corcoran and Guardian ad Litem Anne Greer are each awarded a fee to be paid by the State of Tennessee as provided by T.C.A. 37-1-150 with the exact amount to be determined upon submission of an appropriate claim form.

7. That this matter is remanded to the Juvenile Court for Knox County, Tennessee, for proceedings in accordance with this order.

(Footnote omitted). Mother and Father appeal to this Court.

### Discussion

Although not stated exactly as such, Mother raises one issue on appeal: whether any substantial evidence supports the Trial Court's finding that Mother knew about the sexual abuse of Gage and Gracie and yet knowingly failed to protect them. Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Trial Court erred in admitting the hearsay statements of the children; 2) whether the Trial Court had subject matter jurisdiction to make a severe abuse determination as to Father with respect to Gage and Gracie when they are subject to separate pending adoption proceedings and Father was not a person with custody or

control of the children; 3) whether the Trial Court erred in ordering the requirement of a clear and convincing finding that the danger to their safety no longer existed before Samuel and Uriah would be returned to the custody or residence of Father; 4) whether the Trial Court erred in ordering compliance with the permanency plan; and, 5) whether the evidence was sufficient to find that Samuel and Uriah were dependent and neglected by clear and convincing evidence.

A finding of dependency and neglect must be based upon clear and convincing evidence. Tenn. Code Ann. § 37-1-129 (2014). Our review, however, is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). As this Court discussed in *In re: H.A.L.*:

> Tenn. R. App. P. 13(d) requires us to defer to the trial court's specific findings of fact as long as they are supported by a preponderance of the evidence. However, we are the ones who must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion.

*In re: H.A.L.*, No. M2005-00045-COA-R3-PT, 2005 WL 954866, at *4, n. 10 (Tenn. Ct. App. April 25, 2005), *no appl. perm. appeal filed*, (discussing the clear and convincing standard in a case involving a termination of parental rights). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Our Supreme Court has discussed the clear and convincing standard:

> The "clear and convincing" standard falls somewhere between the "preponderance of the evidence" in civil cases and the "beyond a reasonable doubt" standard in criminal proceedings. To be "clear and convincing," the evidence must "produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Hobson v. Eaton*, 19 Ohio Misc. 29, 399 F.2d 781, 784 n. 2 (6th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). *See e.g. In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. App.1993).

*Estate of Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997) (quoting *Fruge v. Doe*, 952 S.W.2d 408, 412 n. 2 (Tenn. 1997)).   "A parent who is present when a child is abused but who fails to intervene to protect the child has knowingly exposed the child to, or has failed to protect the child from, abuse." *In re: H.L.F.*, 297 S.W.3d 223, 236 (Tenn. Ct. App. 2009).   This Court further has stated in regard to dependency and neglect matters involving conduct toward one child affecting the disposition of other children in the household:

> [E]ven if the record contained zero evidence on Mother's care of J.J.'s sisters S.J. and C.J., it would not matter. The statutory definition of a dependent and neglected child expressly addresses such circumstances; the definition includes any child who is "under such improper guardianship or control as to ... endanger the ... health of such child or others." Tenn. Code Ann. § 37-1-102(b)(12)(F). Given the abuse and neglect suffered by son J.J., it is clear that other children under Mother's care are "under such improper guardianship ... as to ... endanger the ... health of such child...." It would be anomalous indeed if DCS, after finding one child in a household had suffered abuse and neglect, was powerless under the dependency and neglect statutes to remove other children in the household. We reject this argument.

*In re: S.J.*, 387 S.W.3d 576, 589-90 (Tenn. Ct. App. 2012).

We first address Mother's issue of whether any substantial evidence supports the Trial Court's finding that Mother knew about the sexual abuse of Gage and Gracie and yet knowingly failed to protect them.  Mother argues that the Trial Court had no evidentiary basis on which to find the following: "That on at least two occasions, [Gage] disclosed the abuse to the mother, [Mother], but she did nothing to stop the abuse."  DSC argues that, on the contrary, the record does contain evidence that Gage informed Mother about the abuse.

Mother's argument is without merit for at least two reasons.  First, Mother is correct that the record contains no evidence that Gage ever *told* Mother about the abuse.  However, the record does contain evidence that Mother *knew* of the abuse because she saw it.  Dr. McCoy testified regarding Gage's disclosures:

> And, of course, I didn't know what "it" was and I asked him to elaborate on "it". And he said Matt touched his privates with a knife a lot. "Mom watched. She said, Stop. Matt said, No. Matt was mad." And Gage said he didn't know why Mom was mad. . . Matt did it almost every time with a

knife. Gage was scared. And then he said he never talked to his mom about it.

Dr. McCoy testified further that Gage disclosed: "sometimes mommy said stop to Matt, sometimes she didn't." Therefore, even if the evidence does not support a finding that Gage told Mother about the abuse, the evidence supports a finding that Mother knew about the abuse because she saw it and, despite her sometimes urging Father to stop, took no effective action to stop the abuse.

Second, the Trial Court's oral findings, which were incorporated into its final judgment, stated its findings in accordance with the evidence. The Trial Court stated from the bench: "[T]here were disclosures on at least two occasions that mom knew and didn't stop the behavior." Therefore, even if the Trial Court erred in its final judgment in its description of the evidence on this point, it correctly stated the evidence in its incorporated oral findings. Additionally, even without this clarification, we find the dubious distinction between Gage's telling Mother of the abuse as opposed to her knowing about the abuse because she saw it to be of no avail to Mother's case. We affirm the Trial Court with respect to its findings concerning Mother.[2]

We next address Father's issues. The first issue of Father's we address is whether the Trial Court erred in admitting the hearsay statements of the children. Rule 803(25) of the Tennessee Rules of Evidence specifically provides for the admission of statements made by a child alleged to be the victim of physical, sexual or psychological abuse or neglect in civil actions concerning dependency and neglect pursuant to Tenn. Code Ann. § 37-1-102(b)(12), or matters of severe child abuse if "the circumstances indicate trustworthiness . . . ." "[T]he determination of trustworthiness is a matter for the trial court to decide and his decision will not be disturbed on appeal unless there is a showing of abuse of discretion." *State, Dept. of Human Services v. Purcell*, 955 S.W.2d 607, 609 (Tenn. Ct. App. 1997).

Our Supreme Court has given guidance with regard to discretionary decisions stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86

---

[2] Mother has objected throughout this appeal to the consideration of the Juvenile Court records because this case was tried de novo before the Trial Court. We appreciate the fact that this matter was tried de novo before the Circuit Court, and our resolution of this appeal is based squarely upon our review of the Trial Court's record and final judgment.

S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower

court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

Our standard of review as to this issue is abuse of discretion. This issue is rooted in the trustworthiness of the hearsay statements made by the children concerning sexual abuse by Father. Father submits that a forensic interview whereby Gage denied sexual abuse was the most accurate representation of what really happened, and that subsequent disclosures by the children were made to interested parties or under conditions whereby Gage was asked leading questions. Father in his brief argues: "The circumstances surrounding the forensic interview make it the most reliable due to the Gage's calm demeanor and appearance, the fact that it occurred 2 years prior to the interviews by Doctors Scoggins and McCoy—it was the first interview by a noninterested party that did not have the custodian hovering over the children. It was the only interview by someone not paid by a party to this litigation."

In contrast to the forensic interview, Father argues that the following disclosures were not reliable: 1) statements made to Gage and Gracie's custodians; 2) statements made to the therapist Lori Hughes; 3) statements made to therapist Dr. Sabine Scoggins; and 4), statements made to Dr. McCoy. First, Father asserts that the custodians had an interest in keeping the children, and disclosures made to them are suspect. Second, Father asserts that these statements made by the children following the forensic interview occurred after the passage of some time and that the children were essentially prodded into making allegations of sexual abuse by the persistent questioning. Father also states that no extrinsic evidence was elicited to establish Father's opportunity to commit sexual abuse.

Father's objections to the admission of the children's disclosures are of a rather generic type. Father points to no specific evidence tending to undermine the trustworthiness of the circumstances surrounding the disclosures. It was the Trial Court's responsibility to make the initial decision as to the admissibility of these statements, and it did so. We find no abuse of discretion in the Trial Court's admitting these disclosures by the children.

We next address whether the Trial Court had subject matter jurisdiction to make a severe abuse determination as to Father with respect to Gage and Gracie when they are subject to a separate pending adoption proceeding and Father was not a person with custody or control of them. Tenn. Code Ann. § 36-1-116(f) serves to prevent a court from acting on matters of a child subject to an adoption petition. Father argues that "the

Juvenile Court had the authority to find that [Father] had abused the children, that his own children were dependent and neglected, but not that he had severely abused children with whom he did not reside . . . if the Court were proceeding to a Severe Abuse determination against a non-caretaker according to Tenn. Code Ann.§ 37-1-152(b), the constitutional requirement that findings be made by clear and convincing evidence could be circumvented." DCS replies that "The circuit court's conclusion about the abuse suffered by Gage and Gracie formed the basis for the adjudication and disposition regarding Samuel and Uriah. It was the evidence to support the court's order, but it was not the ultimate purpose of the court's order. . . The circuit court took no action regarding Gage and Gracie; it only took action regarding Samuel and Uriah, which was proper and within its authority to do."

Father's argument on this issue is without merit. Gage and Gracie are not the subjects of the present case either at trial or on appeal. Rather, this case concerns the status of Samuel and Uriah. Gage and Gracie factor into this case only to the extent that Father's conduct committed against them has repercussions to the dependency and neglect proceedings regarding Samuel and Uriah. We hold that the Trial Court had subject matter jurisdiction to hear this case involving Samuel and Uriah, notwithstanding the separate pending adoption petition for Gage and Gracie in Chancery Court, and, therefore, could receive evidence relevant to its findings and conclusions as to Samuel and Uriah.

We next address whether the Trial Court erred in ordering the requirement of a clear and convincing finding that the danger to their safety no longer existed before Samuel and Uriah would be returned to the custody or residence of Father, pursuant to Tenn. Code Ann. § 37-1-130(c). DCS concedes this issue. No party alleges that Samuel and Uriah were themselves directly subjected to sexual abuse, and as stated by DCS in its brief, "Tenn. Code Ann. § 37-1-130(c) does not apply to them." As conceded by DCS, the Trial Court, therefore, erred in setting this threshold. We reverse the Trial Court as to this issue.

We next address whether the Trial Court erred in ordering compliance with the permanency plan. According to Father, this was an overreach because one of the requirements in the parenting plan is that the parents reduce their suboxone use. Father argues this has nothing to do with the issues of the case and that the adjudication did not hinge on drug use, although the parents have a history of drug abuse, and that this requirement ordered by the Trial Court is therefore unjustified. DCS argues on the other hand that the Trial Court acted reasonably within its authority and that the statute cited by Father, Tenn. Code Ann. § 37-1-152, does not control this issue. We agree with DCS, and we hold that this rather modest requirement by the Trial Court did not exceed the Trial Court's authority as it was relevant to the children's safety.

-11-

The final issue we address is whether the evidence was sufficient to find by clear and convincing evidence that Samuel and Uriah were dependent and neglected. Father argues that the evidence does not rise to the level of clear and convincing, that there are admissibility problems with the children's hearsay statements, and that, according to Father, the most compelling evidence is the forensic interview whereby Gage denied sexual abuse by Father. DCS, on the other hand, argues that the statements made by the children to their foster parents and therapists show, by clear and convincing evidence, that Father did in fact abuse them sexually.

We already have addressed the admissibility of the children's statements which disposes of Father's main argument as to this issue. We find and hold that the evidence does not preponderate against the findings of the Trial Court relative to this issue. These findings taken together rise to the standard of clear and convincing evidence such that Samuel and Uriah are dependent and neglected children based upon Father's sexual abuse of Gage and Gracie, abuse which occurred with Mother's knowledge and failure to stop it. We affirm the Trial Court as to this issue.

## Conclusion

We reverse the Trial Court's ordering the requirement of a clear and convincing finding that the danger to their safety no longer exists before Samuel and Uriah would be returned to the custody or residence of Father, but affirm the Trial Court's judgment as to all other issues. The judgment of the Trial Court is modified and affirmed as so modified, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Ashley D. and Matthew M., and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE