IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 2, 2018

IN RE R.L. ET AL.

Appeal from the Circuit Court for Montgomery County
No. CC-16-CV-2321        Ross H. Hicks, Judge
_____

No. M2017-02404-COA-R3-JV
_____

In this dependency and neglect case, the juvenile court adjudicated father's (E.L.) six children dependent and neglected and one of the female children (R.L.) a victim of severe abuse perpetrated by father. Father appealed to the circuit court. After a *de novo* hearing, the circuit court entered an order holding that clear and convincing evidence exists to demonstrate that R.L. was sexually abused by father and as such was a dependent and neglected and severely abused child. The court similarly found clear and convincing evidence that father's additional children were also dependent and neglected. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS, and KENNY ARMSTRONG, JJ., joined.

Jacob P. Mathis, Clarksville, Tennessee, for the appellant, E.L.

Herbert H. Slatery, III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

R.L. was born with down syndrome, in 2004. Her down syndrome causes developmental delays and limits her both cognitively and communicatively. At school, she attends special needs classes with teachers trained to accommodate students with her limitations. Her teachers testified that they utilize their respective training and experience

to help them understand how students with limited cognitive and verbal abilities, like R.L., learn and communicate.

As a preliminary matter at the hearing, and because of R.L.'s mental limitations, DCS moved the circuit court for a finding of unavailability under Tenn. R. Evid. 804. An in-camera examination of R.L. was conducted by counsel. The court subsequently held her to be an unavailable witness, for purposes of Tenn. R. Evid. 804,[1] due to her mental capacity. Accordingly, the trial court instead heard testimony about the alleged abuse from R.L.'s teacher, two of her teaching aides, her DCS case worker, her therapist, a forensic social worker, two law enforcement officials, and the father.

The events giving rise to the sexual abuse allegations occurred in August of 2014, at R.L.'s elementary school. Her teacher testified that it was a Monday when he noticed that the child arrived on the school bus appearing unusually distraught. When he asked her to sit down to eat breakfast she refused and instead began to cry uncontrollably. He testified that this was unusual behavior because R.L. was typically a happy child who enjoyed eating breakfast. He asked one of his teaching aides to take R.L. to the restroom to see if that was the source of her problem. While in the restroom, the teaching aide testified that the child disclosed to her that her "daddy" had "squished" her "bottom." The aide asked the child if this meant that she had been disciplined by her father, and she said no. The teacher subsequently came to assist the aide and also heard the child state that her "daddy" had harmed her "bottom." The teacher testified that it appeared to him that the event she was conveying was traumatic for her.

A similar incident occurred on Friday later that same week. The child again arrived at school appearing distraught. On this occasion, she was taken to a sensory room where two teaching aides and the teacher witnessed and testified to the child's alarming statements and gestures. During the second incident, when the child was asked what was wrong, she indicated that her "daddy" had again harmed her, but this time she also made accompanying gestures that her teacher and aides found alarming. The child indicated what had happened to her by placing her hand over her mouth and pointing to her anal region. The school personnel testified that they could tell where she was pointing because her pants were down.

---

[1] Tenn. R. Evid. 804(a)(4) states, in pertinent part:

> (a)   …"Unavailability of a witness" includes situations in which the declarant:
>
> *     *     *
>
> (4) is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity;
>
> *     *     *

On August 22, 2014, DCS received the referral alleging that R.L. was the victim of sexual abuse perpetrated by her father. The next day, R.L. was taken to Our Kids[2] for an examination by a forensic social worker and a nurse practitioner. The social worker testified that there was some difficulty communicating with the child initially, but that as the interview progressed it became easier. She testified that the results of her interview indicated that R.L. was referring to her genitals when she referenced her "bottom." She testified that it is common for children to refer to their genitals by many different names, including their "bottom." She testified that R.L. made disclosures of inappropriate touching during the interview and examination. She testified that she had no doubts the child was clear about having been touched by her father. When questioned about whether the child meant her biological father or her stepfather when referring to "daddy," the social worker stated that she had asked R.L. and that R.L. responded with the biological father's name or something phonetically similar.

The special victims unit detective assigned to the matter testified to receiving the present child abuse referral and to the subsequent criminal investigation of father. Father initially cooperated with her investigation, including driving himself to and from two separate voluntary interviews. The first interview occurred on August 26, 2014, and was conducted by the SVU detective. She testified that, when they were discussing disciplining the child, father made an analogy to 50 Shades of Grey.[3] The detective testified that she found his reference to this novel inappropriate and concerning under the circumstances. A follow-up interview was arranged.

On September 2, 2014, the second interview was conducted with the SVU detective and a special agent of the United States Secret Service present. Father again voluntarily agreed to attend the interview, drove himself, and executed a form regarding his Miranda rights. During the second interview, father told the detective and the special agent about an incident where he explained the difference between "good touches" and "bad touches" to R.L. Father admitted that, during the discussion, he digitally penetrated the child, became aroused, and then ceased touching her. After the digital penetration conversation, the special agent and detective testified that father began to describe another incident to them, but then stopped and indicated he needed an attorney. The second interview was terminated upon father's request for legal counsel.

The interviews were not recorded and father did not execute any type of written statement. Although the detective and the special agents' testimonies differed in some respects, such as how deep father told them he inserted his finger, the trial court

---

[2] Our Kids provides medical evaluations and crisis counseling in response to child sexual abuse.

[3] 50 Shades of Grey, by E. L. James, is a novel dealing with bondage and sexually explicit activities.

[found] those discrepancies to be minor and immaterial. Given the fact that neither interview with [father] was recorded, and the passage of time (three years) between the time the interviews were conducted and their testimony at the final hearing, such discrepancies are certainly not unusual and in fact should be expected.

(Paragraph numbering omitted). Conversely, when father testified regarding the allegations, the court found several aspects of his testimony not credible. The court held that

[b]ased on the inconsistencies of [father's] statements and his illogical explanation of the incident, the Court finds that [father] is not a credible witness and that his admission to law enforcement was a true admission of sexual touching of his child and any explanation he is providing now to explain his confession or the incident that occurred is not credible.

The testimony has clearly established that the child [R.L.] has given every indication that she is a victim of sexual abuse and has named her father [] as the perpetrator of said abuse.

The Court would find the father had ample opportunity and inclination to sexually abuse the child, that the child has made consistent statements regarding inappropriate touching by the father and that her behavior has been consistent with sexual touching, that the father in his explanations of the child's disclosures and behaviors are not credible, and that the father's admission of digital penetration and sexual abuse of the child is reliable.

(Paragraph numbering omitted).

After the hearing, the court requested that the parties submit proposed findings of fact and conclusions of law. On November 14, 2017, the court entered its memorandum opinion and order finding by clear and convincing evidence that R.L. was sexually abused by her father and as such is a dependent and neglected and severely abused child. The court held that

The actions of the father [] constitute an act as set out in T.C.A. 39-13-522 as Rape of a Child and therefore the child [R.L.] is a victim of severe abuse [] as perpetrated by her father.

Additionally, due to this finding, the Court would also find clear and convincing evidence that the child's siblings are also dependent and neglected children within the meaning of the law.

Father's appeal followed.

## II.

On appeal, father raises two issues:

Whether the record supports the trial court's finding by clear and convincing evidence that the children were dependent and neglected.

Whether the trial court erred in allowing hearsay statements of the alleged victim to be introduced at trial.

## III.

We review *de novo* the trial court's findings of fact in the record with a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law under a *de novo* standard with no presumption of correctness attaching to the trial court's legal conclusions. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). A finding of dependency and neglect must be based upon clear and convincing evidence. Tenn. Code Ann. § 37–1–129 (2018). As we recently observed in *In re A.L.H.*, No. M2016-01574-COA-R3-CV, 2017 WL 3822901, at *2 (Tenn. Ct. App., filed Aug. 31, 2017),

[s]evere child abuse in a dependency and neglect proceeding must . . . be established by clear and convincing evidence. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. The evidence should produce a firm belief of conviction as to the truth of the allegations sought to be established. In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate

-5-

that the truth of the facts asserted is highly probable as opposed to merely more probable than not.

(Quoting *In re S.J.*, 387 S.W.3d 576, 587 (Tenn. Ct. App. 2012) (internal quotation marks omitted)).

**IV.**

We first consider father's motion to vacate the ruling of the trial court or, in the alternative, stay the pending appeal and remand the matter to the trial court, and the response filed in opposition.[4] Father moves this Court to consider post-judgment facts not contained in the record. Tenn. R. App. P. 14(a) states, in part, that this Court

> on its motion or on motion of a party may consider facts concerning the action that occurred after judgment. Consideration of such facts lies in the discretion of the appellate court. While neither controlling nor fully measuring the court's discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters.

The advisory commission comment further notes that

> occasionally [it] is necessary for the appellate court to be advised of matters arising after judgment. These facts, *unrelated to the merits and not genuinely disputed*, are necessary to keep the record up to date. This rule gives the appellate court discretion to consider such facts.

Tenn. R. App. P 14 (emphasis added). In *Duncan v. Duncan*, the Supreme Court stated that the appellate courts of this state are not to consider post-judgment facts which (a) are merely cumulative, (b) could be controverted or disputed if presented in a trial court, (c) might lead to differences of opinion, and (d) different conclusions may be drawn from the facts. *Duncan v. Duncan*, 672 S.W.2d 765, 767 (Tenn. 1984).

---

[4] On September 11, 2018, this Court entered an order acknowledging father's July 31, 2018 motion, and stating that the motion and response in opposition thereto would be considered by the panel assigned to this case along with the arguments presented in the parties' briefs.

Father's motion indicates that post-trial, on July 21, 2018, R.L.'s stepfather was arrested for aggravated criminal sodomy with a mentally-deficient person and rape/sexual intercourse with a mentally-deficient person. R.L. is the alleged victim. Father attached two exhibits in support of his motion: a police report indicating stepfather's arrest and charges, as well as a printed copy of an online news article from "ljworld.com" reporting the arrest of stepfather. Father argues that the "new evidence exists to indicate that the child's stepfather [] was in fact the perpetrator who had previously abused her."

While this Court acknowledges that stepfather's criminal conduct may be readily ascertainable and not subject to dispute, the conclusion to be drawn from it most assuredly is. The post-judgment facts presented by father go directly to the disputed issue of whether or not R.L. was sexually abused by father. The post-judgment facts father attempts to present, which were not heard by the trial court, cannot be characterized as "unrelated to the merits," and are thus outside the scope of Rule 14. Additionally, as DCS astutely argues in its responsive motion, stepfather's 2018 arrest does not vitiate father's admitted abuse of R.L. in 2014. The two are not mutually exclusive. Based on the foregoing, father's motion is denied.

## V.

Father argues that the court erred in finding by clear and convincing evidence that the children were dependent and neglected, "as the testimony of the DCS witnesses was not credible and the proof presented by DCS did not meet this high burden." In his brief, father picks through the hearing transcript and highlights instances where the testimony of one witness was contradicted by other witnesses. He also suggests that the SVU detective "demonstrated a general indifference to factual details in [the] case" and was "clearly confusing" and "lacked credibility."

Findings of fact based on witness credibility are given great deference on appeal and will not be disturbed absent clear evidence to the contrary. As Tennessee appellate courts have elucidated, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Stanfield*, No. W2015-02503-SC-R11-CD, 2018 WL 3762174, at *4 (Tenn., filed Aug. 7, 2018) (quoting *State v. Hawkins*, 519 S.W.3d 1, 32 (Tenn. 2017)). "The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary." *Gibson v. Bikas*, No. E2017-00883-COA-R3-CV, 2018 WL 1124507, at *5 (Tenn. Ct. App., filed Feb. 28, 2018).

The reason for the above noted principles are well established. The trial court is able to perceive and assess the facial expressions, body language, and tone of voice of the witness, in addition to the words spoken. By stark contrast, this Court is only presented with printed words on a page. Consequently, "[w]e defer to the trial court's

determinations of witness credibility because the trial judge could observe the witnesses' demeanor and hear in-court testimony." ***Coleman v. Olson***, 551 S.W.3d 686, 694 (Tenn. 2018).

After observing and listening to the witnesses, the court ultimately found that the testimony "has clearly established that the child [] has given every indication that she is a victim of sexual abuse and has named her father [] as the perpetrator of said abuse." The court discerned from the testimony of R.L.'s teacher and two teaching aides that, in August 2014, the child came to school on two occasions displaying concerning behaviors and reporting that her father had harmed her. The testimony of the Our Kids social worker established that the child made disclosures of the father's inappropriate touching to her as well. Regarding the identity of the abuser, the court noted that the "testimony established that [the social worker] did clarify with [R.L.] that she meant [father] as opposed to her stepfather []." The testimony of the SVU detective and the special agent established that, during the second interview with father, he

> admitted that he had digitally penetrated the child up to his first knuckle while bathing her and that he became sexually aroused and then ceased touching the child's vagina. Although [father] stated he was bathing the child and then decided to teach her the difference between good touch and bad touch, he still admitted to digital penetration and sexual arousal while performing the act.

The court stated that any discrepancies between the SVU detective and the special agent's testimony was "not unusual and in fact [] expected" given the duration of time that had lapsed.

Conversely, and as noted above, the court found the testimony it heard from father to be "not consistent, credible, or logical." In its final memorandum opinion and order, the court indicated several concerning and contradictory statements throughout father's testimony to support its finding. For example, the court noted conflicting statements in father's testimony regarding why he was giving R.L. a bath when the digital penetration occurred, why he used his bare hands to wash her genitals, and generally why he decided to engage in any alleged "good touch" and "bad touch" teaching moments given that he was not the primary caregiver.

After careful review of the record, we hold that the evidence does not preponderate against the trial court's findings and that clear and convincing evidence exists that R.L. was the victim of severe abuse and that father's children are dependent and neglected.

## VI.

### A.

Father next argues that the trial court erred in allowing hearsay statements of the child to be introduced at trial. Tenn. R. Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 802 provides that hearsay "is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Applicable here, Tenn. R. Evid. 803(25) permits the admission of statements made by an abused child in a dependency and neglect hearing, if the circumstances indicate trustworthiness; however, declarants thirteen (13) or older must testify unless unavailable as defined by Tenn. R. Evid. 804(a). Tenn. R. Evid. 803(25). An unavailable declarant includes an individual that "is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity." Tenn. R. Evid. 804(a)(4). The determination of whether a statement is hearsay and whether it is admissible through an exception to the hearsay rule is left to the sound discretion of the trial court. *State v. Flood*, 219 S.W.3d 307, 313 (Tenn. 2007). As such, we will not reverse the court's rulings absent a showing that it abused its discretion.

Father argues that the trial court erred in finding R.L. to be unavailable. He argues that the child was thirteen at the time of the hearing, and therefore her statements should have been excluded. Father points out that, prior to the child's availability assessment in-camera, the court mentioned that it would hear from experts. However, after listening to counsel examine the child, the court did not hear any expert testimony on the issue, and instead concluded from R.L.'s testimony that

> [f]or the record, let me just thank you for doing the best you could, but I doubt that you got much that at all, but thank you-all for pitching in to try to help.
>
> I don't think there's any question she's not -- pursuant to Rule 804, she's unavailable and that will be the finding of the Court.

> \*     \*     \*

> She's not competent to testify. She obviously recalls things that have made an impression on her and plays multiple roles in her discussion just like we were seeing a movie and she's

-9-

playing every part. But I -- there was very little of what she said that I could understand. She's not responsive -- appropriately responsive to even direct questions sometimes and quickly launches -- if she gets it right, she's quickly on to something else that's popped into her mind, but in any event, she's not competent.

Father argues that the court erred in finding the child unavailable without hearing from experts, as the court had mentioned. He suggests that, if it had heard testimony from experts, the court would have found that the child is more cognitively able than some believe. He cites examples from the child's therapist's testimony, elicited later in the hearing, to support his position that the child was competent to testify.

Notably, and as argued by DCS, no objection at the hearing was made by father on this issue. In his brief, father does not cite where in the record he preserved this issue for appeal, nor does he cite law indicating expert testimony was required. The complaint of the erroneous admission of evidence will not be considered on appeal where no objection was made at the trial. *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989) citing *Morrow v. Thompson*, 626 S.W.2d 706 (Tenn. App. 1981). Even assuming *arguendo* that the issue was properly preserved, a review of the transcript supports the trial court's decision to find that the testimony of the child was sufficient. During the examination, there were numerous instances where R.L.'s responses were deemed "inaudible" and several other instances where the answers were not responsive to the question asked. We hold that the court did not err in finding the child mentally ill and therefore unavailable to appear at trial under Rule 804.

**B.**

Father also argues that the court erred in admitting R.L.'s out-of-court statements, because the circumstances indicated a lack of trustworthiness. The determination of the trustworthiness of hearsay statements made by a child alleged to be a victim of sexual abuse in a civil action concerning dependency and neglect is a matter for the trial court to decide, and the trial court's decision will not be disturbed on appeal unless there is a showing of abuse of discretion. *In re Samuel D.*, 2016, 536 S.W.3d 447, appeal denied.

In support of his position, father argues that the statements R.L. made during the in-camera examination indicated that she had been coached. He points to a single incident where the child began to make an unprompted statement during the examination. However, whether or not the child had been coached with regards to testifying at the hearing is largely irrelevant given that the statements made by the child to her teachers and other professionals occurred years prior to the examination. The relevant witnesses each testified to R.L. informing them voluntarily and unprompted about father's inappropriate touching, which are both indicia of the trustworthiness of the statements.

Father further argues that R.L.'s reference to "daddy" was also untrustworthy because, during the in-camera examination, she named her stepfather when asked who "daddy" meant. He argues that the stepfather lives with the mother and that it was after the child had returned from her mother's home that the incidents at the school occurred. However, the social worker and the therapist both testified that R.L. was referring to father when she said "daddy." R.L.'s therapist testified that even on the day of the trial the child had called father "daddy" when she saw him. As noted above, the trial court is best positioned to assess issues of trustworthiness. After careful review, we hold that the court did not abuse its discretion. We affirm.

## VII.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, E.L. The case is remanded to the trial court for collection of costs assessed below and enforcement of the trial court's judgment.

_____
CHARLES D. SUSANO, JR., JUDGE
