IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2021 Session

## IN RE CARLEE A.

**Appeal from the Circuit Court for Shelby County**
**No. CT-2371-19     Mary L. Wagner, Judge**
_____

### No. W2020-01256-COA-R3-PT
_____

This appeal follows several related cases involving a now-adopted child. The first case was a surrender proceeding filed in chancery court, the second case was a termination of parental rights proceeding filed in chancery court, and the third case was a proceeding for termination of parental rights and adoption filed in circuit court. Upon the filing of the petition for adoption, the chancery court matters were transferred to circuit court. Three individuals who were parties to the chancery court proceedings jointly filed a motion to intervene in the adoption proceeding, which the circuit court denied. The circuit court also dismissed the claims that had been filed by those three parties in chancery court. The three would-be intervenors appeal the dismissal of their claims filed in chancery court. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

J. Luke Sanderson, Robert A. Wampler, and Alex Stephenson, Memphis, Tennessee, for the appellants, D. Smith, Jr., D. Smith, Sr., and P. Smith.

Richard M. Carter and Abigail A. Stephens, Memphis, Tennessee, for the appellee, Bethany Christian Services of West Tennessee, Inc.

W. Ray Glasgow, Memphis, Tennessee, for the appellees, Mr. and Mrs. A.

## OPINION

# I. FACTS & PROCEDURAL HISTORY[1]

The child at issue in these proceedings, Carlee, was born in 2015 to unmarried parents. A voluntary acknowledgment of paternity was executed by D. Smith, Jr. ("Smith, Jr."), and his name was placed on Carlee's birth certificate as the father. In 2016, an order was entered in juvenile court adjudicating Carlee dependent and neglected and the victim of severe abuse due to drug exposure. The juvenile court order awarded "joint custody" to "the paternal grandparents," D. Smith, Sr. and P. Smith. ("Mr. and Mrs. Smith"). Carlee's parents were to have supervised visitation. DNA testing ultimately revealed that Smith, Jr. was not in fact the child's biological father.

According to Mr. and Mrs. Smith, they later decided to contact an adoption agency about the possibility of adoption for Carlee because of their advanced age and the potential for her to be raised by younger parents. However, according to Mr. and Mrs. Smith, they would only place Carlee for adoption if they were able to remain in Carlee's life as grandparent figures throughout her childhood. Mr. and Mrs. Smith ultimately selected the adoption agency Bethany Christian Services of West Tennessee, Inc. ("BCS") in 2018. Mr. and Mrs. Smith claim that they participated in the process of selecting adoptive parents for Carlee and ultimately selected Mr. and Mrs. A. because they and BCS gave assurances that Mr. and Mrs. Smith could remain in Carlee's life after the adoption in a role similar to traditional grandparents.

Mr. and Mrs. Smith executed some type of document on May 15, 2018, waiving their custodial rights to Carlee. Orders entered during this proceeding describe the document as an "Affidavit of Consent." However, the document itself does not appear in the record before us. After the execution of this document, physical custody of Carlee was placed with Mr. and Mrs. A. Court orders from this case also state that Smith, Jr. surrendered his parental rights in the Shelby County Chancery Court on May 31, 2018, under docket number CHS-18-0021-1, and an order awarding partial guardianship to BCS was entered by the chancery court that same day. Again, the record before us contains no original documents relating to the surrender, nor does it contain the order of partial guardianship. However, Mr. and Mrs. Smith and Smith, Jr. acknowledge that the chancery court entered an order awarding partial guardianship to BCS based on the surrender of parental rights by Smith, Jr. and the "affidavits" executed by Mr. and Mrs. Smith. Smith, Jr. and BCS were parties to the surrender proceeding.

On June 4, 2018, BCS and Mr. and Mrs. Smith jointly filed a petition to terminate the parental rights of Carlee's mother, a putative father, and any unknown father in Shelby County Chancery Court under docket number CH-18-0824-2. Again, the petition is not in the record before us, but according to other orders describing the procedural history related to Carlee, a default judgment was entered on October 5, 2018.

---

[1] In order to protect the privacy of the child, we have used initials to identify the parties.

The earliest document that appears in our appellate record, chronologically, is a "Petition to Revoke Surrender of Minor Child and for Money Damages," which was filed by Mr. and Mrs. Smith in chancery court on November 2, 2018. This petition was filed under docket number CHS-18-0021-1, which was the proceeding in which Smith, Jr. had surrendered his parental rights. The style of the case reflected on the petition to revoke surrender and for damages was "*In re Carlee . . ., [P.] and [D.] Smith v. Bethany Christian Services of West Tennessee, Inc. and [Mr. and Mrs.] A[.]*" In their petition, Mr. and Mrs. Smith sought "an order revoking the Petitioners' surrender of the minor child" and an order setting aside the order of partial guardianship. The petition alleged that Smith, Jr. was "[t]he putative father at the time of the child's birth" and described the dependency and neglect proceeding during which Mr. and Mrs. Smith had been granted "legal custody" of Carlee. Mr. and Mrs. Smith alleged that they eventually decided on adoption, only because BCS and Mr. and Mrs. A. repeatedly assured them that they could remain in Carlee's life in the role of traditional grandparents. The petition referenced the "signed surrender" and "affidavits" executed in May 2018 and alleged that Mr. and Mrs. Smith had "experienced a gradually increasingly difficult time" contacting Carlee since then. According to the petition, BCS had assured Mr. and Mrs. Smith that their visitation would resume once the adoption was permanent. However, on October 10, 2018, the petition alleged, Mr. and Mrs. Smith received correspondence from BCS directing them to cease all communication with Mr. and Mrs. A. and Carlee. According to the petition, Mr. and Mrs. Smith immediately responded by stating that they wished to "rescind the surrender and regain custody of Carlee." However, BCS allegedly responded by stating that Carlee would remain in her adoptive placement. The petition alleged that at that point, "it became apparent to [Mr. and Mrs. Smith] that they had been fraudulently induced into surrendering their child, Carlee[.]" The petition asked the chancery court to revoke the "surrender" signed by Mr. and Mrs. Smith, set aside the order of partial guardianship, and reinstate Mr. and Mrs. Smith as the custodians of the child. Very briefly, the petition also alleged that "[Mr. and Mrs. Smith] have experienced significant psychological and emotional distress by being kept from the minor child who is the subject of this litigation." Their prayer for relief requested "$50,000 for compensatory damages for Intentional and Negligent infliction of Emotional Distress and for $50,000 in punitive damages for fraudulent inducement into a contract for the surrender of a minor child."

Days later, Mr. and Mrs. Smith filed an amended petition that appears to have only changed one sentence from the original petition. One week later, they filed a second amended petition, this time adding their son, Smith, Jr., to the style of the case as an additional petitioner. However, the substantive allegations of the petition remained the same.

On January 8, 2019, Mr. and Mrs. A. filed a motion to dismiss for failure to state a claim and/or for summary judgment. They noted that Mr. and Mrs. Smith had executed "Affidavits of Consent" waiving their custodial rights and thus construed the petition as an

- 3 -

effort to "revoke their son's surrender" that had been filed under the same docket number. The Smiths had not cited any statutory basis for their petition to revoke the surrender, but Mr. and Mrs. A. asserted that the surrender by Smith, Jr. could not be revoked after thirty days based on an allegation of fraud pursuant to Tennessee Code Annotated section 36-1-112, which provides, in pertinent part:

> (a)(1)(A) A person who executed a surrender may revoke the surrender at any time within three (3) calendar days of the date of the surrender. . . . .
> . . . .
> (F)(i) No surrender may be revoked by the person surrendering the child or set aside by a court after the expiration of the three-day period except as the surrender may be invalidated by court order entered pursuant to a timely filed complaint filed pursuant to subsection (c) or as permitted by order of the court entered pursuant to § 36-1-118.
> . . . .
> (c) After the revocation period has expired . . . , no surrender . . . shall be set aside by a court except upon clear and convincing evidence of duress, fraud, intentional misrepresentation or for invalidity under § 36-1-111(d), and no surrender . . . may be set aside for any reason under this part unless the action based on these grounds is initiated within thirty (30) days of the execution of the surrender . . . .

Tenn. Code Ann. § 36-1-112. Mr. and Mrs. A. also asserted that issues regarding surrenders and adoptions are controlled by statute and that there was no other statutory basis for Mr. and Mrs. Smith to assert a cause of action or gain the relief they sought. According to Mr. and Mrs. A., the Smiths were essentially trying to recover damages for an alleged breach of contract for post-adoption visitation when such agreements are not recognized as lawful in Tennessee.

BCS also filed a motion to dismiss the Smiths' petition to revoke the surrender and for damages, asserting failure to state a claim. BCS likewise argued that the attempt to revoke the surrender was untimely and barred by statute. BCS described the remainder of the petition as "a tort action arising out of an adoption" but contended that the petition did not state a claim because it did not sufficiently allege the elements of negligent or intentional infliction of emotional distress or fraud.

Before the chancery court heard these motions to dismiss the Smiths' petition to revoke the surrender and for damages, Mr. and Mrs. A. filed a petition for termination of parental rights and for adoption in the Shelby County Circuit Court. They sought to terminate the parental rights of Carlee's mother, a putative father, and any unknown father. BCS was also named as a respondent. The adoption petition noted that Smith, Jr. had been listed on the child's birth certificate but that he had been excluded as Carlee's biological father by DNA testing and that he had also surrendered his parental rights in chancery

- 4 -

court.  The petition also noted that Mr. and Mrs. Smith had been awarded "joint" legal custody during a dependency and neglect proceeding but that they had subsequently waived their custodial rights and transferred custody to BCS.  The petition stated that upon the surrender of parental rights by Smith, Jr. and the waiver of custodial rights by Mr. and Mrs. Smith, the chancery court had entered its order of partial guardianship in favor of BCS.  The adoption petition also noted the previous petition for termination of parental rights that had been filed in chancery court.  Finally, the adoption petition noted that the Smiths had filed a petition to revoke the surrender and for money damages in chancery court in November 2018.  However, the adoption petition cited Tennessee Code Annotated section 36-1-116(f), which provides, in pertinent part, regarding adoption petitions:

> (f)(1) Upon the filing of the petition, *the court shall have exclusive jurisdiction of all matters pertaining to the child*, including the establishment of paternity of a child pursuant to chapter 2, part 3 of this title, except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37; provided, that, unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners, the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption, or unless the petitioners otherwise meet the requirements of § 36-1-111(d)(6).
>
> (2) Except for proceedings concerning allegations of delinquency, unruliness, or truancy of the child under title 37, *any proceedings that may be pending seeking the custody or guardianship of the child or visitation with the child who is in the physical custody of the petitioners on the date the petition is filed, or where the petitioners meet the requirement of § 36-1-111(d)(6), shall be suspended pending the court's orders in the adoption proceeding, and jurisdiction of all other pending matters concerning the child* and proceedings concerning establishment of the paternity of the child *shall be transferred to and assumed by the adoption court*; provided, that until the adoption court enters any orders affecting the child's custody or guardianship as permitted by this part, all prior parental or guardian authority, prior court orders regarding custody or guardianship, or statutory authority concerning the child's status shall remain in effect. *Actions suspended by this section, regardless of the stage of adjudication, shall not be heard until final adjudication of the action for termination of parental rights or adoption regarding the same child, even if such adjudication of the termination of parental rights or adoption will render the custody, guardianship, or visitation action moot.*

- 5 -

Tenn. Code Ann. § 36-1-116(f)(1)-(2) (emphasis added). The adoption petition stated that notice had been provided to the chancery court of the filing of the adoption petition so that both of the chancery court matters (the termination case and the surrender proceeding) could be suspended and transferred to circuit court. The adoption petition asserted that upon termination of the parental rights of Carlee's mother, putative father, and any unknown father, complete guardianship should be placed with BCS with the right to consent to adoption.

One week after the filing of the adoption petition, Mr. and Mrs. Smith and Smith, Jr. filed a motion to intervene in the adoption case in circuit court. Their motion only generally cited "Rule 24" of the Tennessee Rules of Civil Procedure and asserted a need to intervene in order to object to the adoption petition.[2] The Smiths generally claimed to have "an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest." The Smiths' motion to intervene recited the allegations from their chancery court petition, noting that Mr. and Mrs. Smith had once had legal custody of Carlee and that partial guardianship had been awarded to BCS after a surrender of parental rights by Smith, Jr. and affidavits were signed by Mr. and Mrs. Smith. The Smiths again asserted that they had been fraudulently induced into surrendering Carlee and suffered emotional distress. Thus, they asked to intervene in the pending adoption case "to protect their interests in this litigation."

Mr. and Mrs. A. filed a response to the motion to intervene, asserting that the motion was not filed in compliance with the Tennessee Rules of Civil Procedure and did not set forth any basis for a legal right to object to the adoption petition. After a hearing, of which we have no transcript, the circuit court entered an order denying the Smiths' motion to intervene in the adoption case. The circuit court found that the Smiths' motion to intervene was not filed in compliance with the rules governing intervention, it failed to state a right to intervene or a basis for permissive intervention, it was not accompanied by a petition or supporting document, and the Smiths lacked standing to intervene in the proceeding. As such, the motion to intervene was denied. The order further stated,

> [T]his Court has exclusive jurisdiction of all matters pertaining to the minor child pursuant to Tenn. Code Ann. § 36-1-116(f)(1) due to the filing of the Petition for Adoption, and matters previously pending in the Chancery Court of Shelby County and transferred by operation of law to this Court are hereby suspended pursuant to Tenn. Code Ann. § 36-1-116(f)(2), until the disposition of the Petition for Adoption.

---

[2] Tennessee Rule of Civil Procedure 24.01 addresses intervention as of right. Rule 24.02 addresses permissive intervention.

Shortly thereafter, the chancery court entered an order suspending the proceedings in the first termination case and transferring the file to circuit court.

The Smiths filed a motion to alter or amend the circuit court's order denying their motion to intervene. The Smiths contended that Mr. and Mrs. A. had filed their petition for adoption in circuit court in an effort to "collaterally defend" against their petition to revoke the surrender in chancery court. The Smiths acknowledged that the surrender proceeding had been suspended upon the filing of the adoption petition. Without any citation to authority, they alleged that the denial of their motion to intervene and the suspension of their petition to revoke the surrender "effectively denied [them] due process by having no access to the court." The Smiths insisted that they "must be given an opportunity to be heard regarding their Petition to Revoke Surrender, as the results of that proceeding will determine whether or not the Intervening Petitioners have standing to bring an action to object to the adoption proceedings." The Smiths suggested that if their petition to revoke the surrender was granted, "they would once again be named the legal guardians of the child" and then would "have standing to sue to object to the adoption." Therefore, the Smiths asked the court to grant their motion to alter or amend the order denying intervention and allow them to proceed with a hearing on whether the surrender should be revoked.

Days later, the circuit court held the trial on termination of the parental rights of Carlee's mother, the putative father, and any unknown father. The circuit court entered an order terminating those parties' parental rights on October 3, 2019. We do not have a trial transcript in the record before us, but the termination order recited the procedural history of the cases involving Carlee. It noted that a petition to revoke the surrender and for money damages had been filed by the Smiths in chancery court and that the chancery court actions had been suspended upon the filing of the petition for adoption. Upon the termination of parental rights, the order awarded partial guardianship of the child to Mr. and Mrs. A. After another hearing, the circuit court entered a final decree of adoption on November 7, 2019. The court found that all necessary parties were properly before the court and that Carlee should be adopted by Mr. and Mrs. A.

Shortly after the order of adoption was entered, Mr. and Mrs. A. filed a motion for injunctive relief to restrain Mr. and Mrs. Smith from disclosing information about Carlee on social media and public forums. This motion listed not only the docket number for the circuit court adoption proceeding but also the docket numbers for the two cases transferred from chancery court. BCS also filed a petition for contempt against Mr. and Mrs. Smith for disclosing confidential information about the proceeding, and the petition for contempt also listed all three docket numbers, along with the word "Consolidated" beside them. Mr. and Mrs. Smith filed a response listing the docket numbers in the same manner. The circuit court entered an order of continuance and notice setting a hearing that also, for the first time, listed all three docket numbers on an order. However, the order contained no mention

of consolidation.[3]

Thereafter, the circuit court entered an order setting a status conference, which listed only the docket number for the adoption case. Mr. and Mrs. Smith filed a memorandum in support of their still-pending motion to alter or amend the order denying intervention.[4] Because the surrender proceeding was suspended by statute pending final adjudication of the adoption proceeding, they reiterated their position that Tennessee Code Annotated section 36-1-116(f)(2) had denied them due process by giving them no access to a court to pursue revocation of the surrender and regain their right to custody. Mr. and Mrs. Smith insisted that they must be permitted to "regain their legal right by revoking the surrender of custody under TCA § 36-1-112."

Mr. and Mrs. A. filed a response to the motion to alter or amend, pointing out that Mr. and Mrs. Smith had never had more than "legal custody" of Carlee and were not her parents or guardians, so their relinquishment of custody did not qualify as a "surrender" of parental or guardianship rights under Tennessee law. As such, they argued that Mr. and Mrs. Smith could not proceed under the statutory procedures for revoking a "surrender." They also argued that Mr. and Mrs. Smith cited no caselaw regarding due process and provided no authority that would enable them to intervene and challenge the adoption.

The Attorney General for the State of Tennessee filed a notice of intent not to intervene in the case despite the allegation by the Smiths that the statute denied them due process. The Attorney General's notice stated that the State of Tennessee is entitled to be heard when a statute is alleged to be unconstitutional but that in this case, "there appear to be significant issues as to standing and timeliness that would render it unnecessary for the court to reach the constitutional issue." The notice stated that constitutional issues should not be decided unless absolutely necessary. It also stated that Mr. and Mrs. Smith had raised "what is at best an as-applied challenge" that did not draw the validity of the statute into question.

Thereafter, the circuit court entered an "Order to Reserve Ruling on Motion to Alter or Amend Judgment and to Set Hearing on Motion for Summary Judgment and Motion to Dismiss." This order also listed all three docket numbers but again made no mention of consolidation. The order states that a hearing was held on the Smiths' motion to alter or amend the order denying intervention and that a constitutional challenge had been raised. The order referenced the motion to dismiss and/or for summary judgment that had been filed by Mr. and Mrs. A. and the motion to dismiss that had been filed by BCS in the chancery court proceeding involving the petition to revoke the surrender and for money

---

[3] A consent order was eventually entered resolving all issues raised by the motion for injunctive relief and petition for contempt. This order also listed all three docket numbers.

[4] This memorandum listed only Mr. and Mrs. Smith as the petitioners, not Smith, Jr.

damages, all prior to the filing of the adoption petition in circuit court. The order stated that these motions to dismiss remained pending and should be heard prior to the hearing of the constitutional challenge raised in the motion to alter or amend pending in the adoption case. Thus, the circuit court directed the parties to brief certain issues pertaining to the statute governing revocation of a surrender, whether the Smiths had standing to bring their actions, and the timeliness of the constitutional argument they raised for the first time in the motion to alter or amend the order denying intervention. The order stated that the circuit court would resolve the motions to dismiss that were filed in the chancery court cases first and "reserve ruling" on the motion to alter or amend pending in the adoption case.

In their brief, Mr. and Mrs. A. asserted that there was no basis in statute or caselaw for Mr. and Mrs. Smith to "recall" the affidavits they executed waiving their custodial rights. They maintained that Mr. and Mrs. Smith could not pursue a revocation under the surrender statute because they were not parents or guardians who executed a surrender. They also argued that the surrender statute barred any attempt to set aside the surrender of parental rights executed by Smith, Jr. when the petition to set it aside was filed nearly six months after the surrender was executed. They again relied on the statute they had cited in chancery court, Tennessee Code Annotated section 36-1-112(c), which states that after the three-day revocation period has expired, "no surrender . . . shall be set aside by a court except upon clear and convincing evidence of duress, fraud, [or] intentional misrepresentation . . . , and no surrender . . . may be set aside for any reason under this part unless the action based on these grounds is initiated within thirty (30) days of the execution of the surrender[.]" Simply put, Mr. and Mrs. A. contended that the Smiths' attempt to set aside a surrender on the basis of fraud was time-barred when it was filed more than thirty days after execution. The Smiths filed a response arguing that the thirty-day time period provided by the revocation of surrender statute "should be tolled by the discovery rule doctrine." The Smiths suggested that the thirty-day period only began to run after discovery of the fraud, which, they argued, occurred when BCS instructed them to cease all communication with Carlee.

After another hearing, the circuit court entered a single order on May 27, 2020, resolving the motions to dismiss from the chancery court surrender proceeding and the motion to alter or amend in the adoption proceeding. This order again listed all three docket numbers, and it is the first order in the record that contains a notation of "Consolidated" beside the docket numbers. However, the order does not otherwise mention consolidation. The circuit court described the "complex procedural history" of the cases and divided its discussion into three sections for "CH-18-0824-2 – the Termination Proceeding," "CHS-18-0021-1 – the Surrender Proceeding," and finally, "Circuit Court Action (CT-2371-19)." It noted that the Smiths had filed their chancery court petition to revoke the surrender and for money damages, asking the chancery court to set aside the order of partial guardianship to BCS and reinstate them as custodians of the child. The order states that the two chancery court matters "were suspended and transferred to the Circuit Court" pursuant to Tennessee

Code Annotated section 36-1-116(f)(1) after the filing of the adoption petition. The order noted that the Smiths "sought to intervene with their Petition from Chancery Court in the adoption proceeding" but that the motion was denied. According to the order, the Smiths filed their motion to alter or amend the order denying intervention, but they did not set the motion for a hearing until after both the termination hearing and the adoption hearing. Thus, the order noted that the court had already entered an order of termination of parental rights and an order of adoption. The order states that at the subsequent hearing on the motion to alter or amend, "everyone agreed that the Court has a duty to avoid constitutional questions if possible" and "all parties agreed that if the Court granted the pending dispositive motions then the Motion to Alter or Amend to allow intervention would be moot." As a result, the order states, the court set a hearing on the pending dispositive motions and reserved its ruling on the motion to alter or amend.

After setting forth the standard of review for a motion to dismiss, the circuit court stated that it would "address the claims for revocation of surrender and the claims for money damages separately." Regarding the revocation of surrender issue, the court noted that it was unclear whether it was only Mr. and Mrs. Smith seeking to revoke "their surrender of custodial rights" or whether Smith, Jr. also sought to revoke the surrender of his parental rights. For purposes of the motion to dismiss, the court construed the request as coming from "all three." The circuit court carefully analyzed Tennessee Code Annotated section 36-1-112 and its procedures for revoking a surrender. It found that in order to revoke a surrender beyond the three-day revocation period, one may allege fraud, duress, misrepresentation, or invalidity, and the Smiths alleged fraud. However, the court also noted that the statute provides for revocation for these reasons only if the revocation proceeding is initiated within thirty days of the execution of the surrender. The circuit court noted the Smiths' argument that the discovery rule should apply but concluded that such an argument was "contrary to the clear and unambiguous language of the statute and not supported by any case law." Because the Smiths sought to revoke a surrender pursuant to Tennessee Code Annotated section 36-1-112(d) "well beyond the thirty day limit provided" by the statute, the court found that their petition for revocation was barred and must be dismissed.

The next section of the order was entitled, "Claims for Money Damages." The circuit court noted that the prayer for relief in the Smiths' petition also requested "compensatory damages for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and for punitive damages for fraudulent inducement into a contract." However, there was no section of the petition itself specifically alleging the elements of such claims. Looking to the gravamen of the claims that *were* set forth in the complaint, the court found that they were "based on the allegation that [BCS] and [Mr. and Mrs. A.] breached their contract to allow the Smiths to act as grandparents and maintain contact with the child post adoption." The court noted that the Smiths had sometimes used terms such as "promise" or "agreement" but found their claims were "still based upon a perceived contract between the parties." As such, the court concluded, "the gravamen of

- 10 -

their complaint is a breach of contract." The court noted that Tennessee Code Annotated section 36-1-121(f) provided, at the time of the surrender in 2018:

> The adoptive parents of a child shall not be required by any order of the adoption court to permit visitation by any other person, nor shall the order of the adoption court place any conditions on the adoption of the child by the adoptive parents. Any provision in an order of the court or in any written agreement or contract between the parent or guardian of the child and the adoptive parents requiring visitation or otherwise placing any conditions on the adoption shall be void and of no effect whatsoever; provided, that nothing under this part shall be construed to prohibit "open adoptions" where the adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child; and provided further, that the permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons.

Based on this statute, the circuit court concluded that "any contract or agreement the Smiths believed they had regarding visitation with the minor child is void and unenforceable as against the public policy in Tennessee." The court further concluded that "there can be no enforceable rights based upon any such agreement." The court reasoned that allowing "any cause of action to proceed based upon the breach of any such agreement or fraudulent inducement to enter into any such agreement would be a direct contradiction of the law existing at the time." "Further," the court added, "the Smiths fail[ed] to allege any duty owed by either [BCS] or [Mr. and Mrs. A.] separate from the Agreement" to support any claim of negligence. "For all of these reasons," the court concluded, "the Smiths have failed to state a claim upon which relief can be granted *for any claims for money damages* and therefore, these causes of action must be dismissed." (emphasis added). Because the court granted the motions to dismiss for failure to state a claim, it also found that an award of attorney fees was appropriate pursuant to Tennessee Code Annotated section 20-12-119. Finally, the order stated that in accordance with the parties' agreement, "the Smiths' Motion to Alter or Amend seeking this Court to allow them to intervene in the adoption action filed in Circuit Court is denied as moot due to the dismissal of their Petition." The conclusion section of the order reiterated that the court granted the motions to dismiss and the petition for revocation and for money damages for failure to state a claim upon which relief can be granted and also denied the Smiths' motion to alter or amend as moot. The order stated that any other pending motions were also denied as moot and that "this is a final order."

Within thirty days of the May 27 order, on June 19, the Smiths filed what they titled as a "Rule 59 Motion to Alter or Amend the Order Granting Motion for Summary Judgment

- 11 -

and Motions to Dismiss." The motion listed the docket number for the surrender proceeding but also contained a handwritten notation of the circuit court docket number. The motion states:

> Intervening Petitioners will state and show the following in support of this motion, to-wit:
>
> 1. That Intervening Petitioners originally filed a claim for monetary damages against all defendants in the above referenced matter.
> 2. That the Order Granting Motion for Summary Judgment and Motion to Dismiss were silent as to whether or not the claim for monetary damages has been dismissed.
> 3. That Intervening Petitioners are seeking clarification as to whether or not the claims regarding monetary damages have been dismissed.
>
> WHEREFORE, PREMISES CONSIDERED, Intervening Petitioners pray:
>
> 1. For an Order clarifying that this Honorable Court's previous Order granting Motions to Dismiss and Motion for Summary Judgment to further clarify whether or not Intervening Petitioners claims for monetary damages has been dismissed.
> 2. For any other relief, specific or general, this court deems proper.

Mr. and Mrs. A. filed a response to the motion to alter or amend. Like the motion to alter or amend itself, the response listed the docket number for the chancery court surrender proceeding but had a handwritten notation of the docket number for the circuit court adoption proceeding beside it. Mr. and Mrs. A. argued that the Smiths' motion purported to be a motion to alter or amend but that it did not qualify as one substantively. They noted that the motion falsely asserted that the order of dismissal was silent as to whether the claims for monetary damages were dismissed when that was "simply not true," as the order specifically stated that "any claims for money damages . . . must be dismissed." As such, Mr. and Mrs. A. asserted that the Smiths' motion requesting "clarification" was frivolous and should be stricken as void ab initio. Alternatively, Mr. and Mrs. A. argued that the motion to alter or amend had been filed only under the docket number for the chancery court proceeding, and the chancery court proceeding should have been suspended and not heard until final adjudication of the adoption proceeding pursuant to Tennessee Code Annotated section 36-1-116(f)(2). Mr. and Mrs. A. argued that the order in the adoption proceeding had since become final, and therefore, any remedy sought in the chancery court matter had become moot.

On July 6, more than thirty days after the May 27 order, the Smiths filed an amended motion to alter or amend. The amended motion conceded that the trial court's May 27 order stated that all claims for monetary damages were dismissed. Still, the amended

motion asserted that there was nothing in the order specifically addressing the claim for intentional infliction of emotional distress when the other claims for monetary damages had a detailed analysis. The Smiths insisted that they had properly alleged all elements of intentional infliction of emotional distress and that the issue was one of fact not appropriate for resolution on a motion to dismiss. As such, they asked the court to alter or amend its order to allow the claim for intentional infliction of emotional distress to proceed or to clarify the reasons for dismissal of that claim.

BCS also filed a response, arguing that the Smiths' amended motion merely asked the court for detailed reasons for the dismissal when such reasoning need not be provided in an order on a motion to dismiss. Thus, BCS asked the court to deny the amended motion.

After a hearing, the circuit court entered an order denying the Smiths' amended motion to alter or amend. The order lists all three docket numbers with the word "consolidated" beside them. At the outset, the circuit court noted that it is required to look to the substance of a motion rather than its title. The court recognized that the Smiths' had titled their motions as filed pursuant to "Rule 59" but concluded that in substance they "only seek clarification of this court's ruling." The circuit court concluded that a motion for "clarification" does not qualify as a proper Rule 59 motion and is not otherwise contemplated by the Tennessee Rules of Civil Procedure. The circuit court noted that its order of dismissal did not contain any clerical errors, there was no change in the law or new evidence, and the order clearly addressed all claims "based upon the gravamen of their complaint, which is a breach of contract." Therefore, the court denied the motion.

On September 14, 2020, the Smiths filed a notice of appeal to this Court. The notice of appeal only listed the docket number for the circuit court adoption proceeding: CT-2371-19. However, it listed the style of the case as "D[.] Smith, Sr., P[.] Smith, and D[.] Smith, Jr. v. Bethany Christian Services, Inc. and [Mr. and Mrs.] A[.]," which correlates with their chancery court petition from the surrender proceeding, not the adoption petition filed by Mr. and Mrs. A. The initial record provided to this Court on appeal only contained the documents from the circuit court adoption proceeding depicting docket number CT-2371-19. However, BCS filed a motion to correct the record on appeal to include documents filed in the chancery court cases. The motion was not opposed by the Smiths or Mr. and Mrs. A. This Court entered an order remanding to the trial court for the limited purpose of resolving the motion to supplement the record. The circuit court subsequently entered an order stating that the documents filed in chancery court were properly includable in the appellate record. This Court received a supplemental record containing the additional documents.

BCS also filed a motion to dismiss this appeal on the basis that the Smiths had not filed a proper and timely Rule 59 motion that would toll the time period for filing an appeal. This Court entered an order denying the motion on the basis that the appeal appeared to be timely "on the face of the record," and therefore, dismissal at that time would have been

- 13 -

"premature and inadvisable." However, we stated that any arguments regarding whether the post-judgment motions were "proper" motions would best be addressed by an entire panel following full briefing.

## II.   Issues Presented

The Smiths raise the following issues, as we perceive them, in their brief on appeal:

1.      Was the Smiths' motion to alter or amend a properly filed motion pursuant to Tennessee Rule of Civil Procedure 59.04;
2.      Does the discovery rule apply to delay the thirty-day time period for filing a complaint to invalidate a surrender based on fraud under Tennessee Code Annotated section 36-1-112;
3.      Did the trial court improperly dismiss the claims for monetary damages, or more specifically, the claim for intentional infliction of emotional distress, because it was unaddressed in the order; and
4.      Should the appellees have been awarded attorney fees.

In its posture as appellee, BCS filed a brief on appeal that was later joined by Mr. and Mrs.

A.   The issues presented in the appellees' brief, which we have slightly restated, are:

1.      Whether the Smiths' brief should be stricken for failure to comply with Tennessee Rule of Appellate Procedure 27 and Tennessee Court of Appeals Rule 6;
2.      Did the circuit court correctly find that the Smiths failed to file a proper Rule 59 motion, rendering their appeal untimely;
3.      Did the circuit court correctly find that the Smiths' petition failed to state a claim upon which relief could be granted under Rule 12.02(6); and
4.      Are BCS and Mr. and Mrs. A. entitled to attorney fees on remand.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings consistent with this opinion.

## III.   Discussion

### *A.    The Smiths' Brief on Appeal*

We begin with the appellees' argument that the Smiths' brief should be stricken for failure to comply with the applicable rules regarding briefing. The appellees correctly note that for each issue on appeal, the written argument in a brief must contain references to the record. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. App. R. 6(a)(4). They also correctly note that the facts section must include appropriate references to the record. *See* Tenn. R. App.

- 14 -

P. 27(a)(6). According to the appellees, the Smiths' entire brief contains only twenty citations to the record, with nineteen in the statement of the case, only one in the statement of the facts, and none in the argument section. Because of this deficiency in the brief, the appellees ask this Court to dismiss the appeal. In their reply brief on appeal, the Smiths do not dispute these numbers but insist that their brief complied with the applicable rules.

Having reviewed the Smiths' brief on appeal, we agree with the appellees that it does not comply with the applicable rules due to its failure to cite to the appellate record within the facts section and the argument section of the brief. This is a major omission. However, considering the record citations in the statement of the case, we conclude that the brief is not so deficient as to warrant dismissal of the appeal under the facts of this case. *See Total Garage Store, LLC v. Moody*, No. M2019-01342-COA-R3-CV, 2020 WL 6892012, at \*6 (Tenn. Ct. App. Nov. 24, 2020) (acknowledging that a brief was "not a model for record citation" but concluding that it was "not so deficient throughout as to justify the heavy penalty of dismissal," yet "warn[ing] litigants that failure to consistently cite to the record as required risks waiver of one's issues on appeal"); *Boesch v. Holeman*, 621 S.W.3d 60, 70 (Tenn. Ct. App. 2020) (recognizing that a brief contained no statement of the facts but concluding that it was not so deficient as to require waiver of all issues and deciding to "press on" with deciding the matter). We caution counsel for the Smiths that we may not elect to proceed in the same manner in other cases.

### B.    Three Cases -- Transfer and Consolidation

At the outset, it is important to recognize that three separate cases preceded this appeal. The first began as a surrender proceeding in chancery court and involved a subsequent petition to revoke the surrender and for money damages. The second was a termination petition filed jointly by BCS and Mr. and Mrs. Smith in chancery court. The third action was a petition for termination and adoption filed by Mr. and Mrs. A. in circuit court.

As is sometimes the case with multiple actions, "[i]t is apparent to this Court that the parties lost sight of the exact nature of these actions during the course of the proceedings below." *City of New Johnsonville v. Handley*, No. M2003-00549-COA-R3-CV, 2005 WL 1981810, at \*8 (Tenn. Ct. App. Aug. 16, 2005), *perm. app. denied* (Tenn. Feb. 6, 2006). However, the issue of "[w]hether these cases have been joined or consolidated is a matter we do not take lightly due to the effect the characterization of a lawsuit has on our appellate review." *Id*. The record before us does not contain any order from the circuit court either joining or consolidating the actions filed in this case.

Consolidation is provided for in Rule 42.01 of the Tennessee Rules of Civil Procedure, which states:

When actions involving a common question of law or fact are pending before

- 15 -

a court, the court may order all the actions consolidated or heard jointly, and may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Permissive joinder of parties is addressed in Rule 20.01, which states, in pertinent part:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. . . .

This Court has explained the interplay between consolidation and joinder as follows:

[I]t is useful to distinguish joinder of parties from consolidation of actions under Rule 42.01. Plaintiffs and defendants properly joined under Rule 20.01 are *all parties to the same civil action*, even when the claims by or against them are several, as opposed to joint. Consolidation of separate actions under Rule 42.01, on the other hand, *does not create one action or make those who are parties in one suit parties in another*. Consolidation simply allows a single trial of common issues and permits joint discovery for purposes of judicial economy.
 Several consequences may follow from the distinction between joinder and consolidation. *When parties are joined in an action, they and the claims by or against them must be taken into account for a number of important purposes such as determining whether . . . a judgment is a final appealable order. . . . When actions are consolidated, on the other hand, a party or a claim in only one of the actions may not be taken into account for these purposes in the other consolidated actions.*

*City of New Johnsonville*, 2005 WL 1981810, at *9 (quoting Robert Banks, Jr. & June F. Entman, *Tenn. Civil Procedure* § 6-5(b) (1999)).

We also note that once the adoption petition was filed, Tennessee Code Annotated section 36-1-116(f) mandated the suspension of the chancery court actions as follows:

(1) Upon the filing of the petition, the court shall have exclusive jurisdiction of all matters pertaining to the child, including the establishment of paternity of a child pursuant to chapter 2, part 3 of this title, except for allegations of

- 16 -

delinquency, unruliness or truancy of the child pursuant to title 37; provided, that, unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners, the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption, or unless the petitioners otherwise meet the requirements of § 36-1-111(d)(6).

(2) Except for proceedings concerning allegations of delinquency, unruliness, or truancy of the child under title 37, *any proceedings that may be pending seeking the custody or guardianship of the child or visitation with the child who is in the physical custody of the petitioners on the date the petition is filed, or where the petitioners meet the requirement of § 36-1-111(d)(6), shall be suspended pending the court's orders in the adoption proceeding, and jurisdiction of all other pending matters concerning the child and proceedings concerning establishment of the paternity of the child shall be transferred to and assumed by the adoption court*; provided, that until the adoption court enters any orders affecting the child's custody or guardianship as permitted by this part, all prior parental or guardian authority, prior court orders regarding custody or guardianship, or statutory authority concerning the child's status shall remain in effect. *Actions suspended by this section, regardless of the stage of adjudication, shall not be heard until final adjudication of the action for termination of parental rights or adoption regarding the same child, even if such adjudication of the termination of parental rights or adoption will render the custody, guardianship, or visitation action moot.*

(emphasis added). "When the petition for adoption is filed, jurisdiction over all matters related to the child, other than those regarding delinquency, unruly or truant acts, transfers to the court where the adoption petition is filed." Dawn Coppock, *Coppock on Tennessee Adoption Law* 43 (2017). This "serves to prevent a court from acting on matters of a child subject to an adoption petition." *In re Samuel D.*, 536 S.W.3d 447, 456 (Tenn. Ct. App. 2016).[5] However, the statute clearly envisions that the suspended actions remain separate

---

[5] Tennessee Code Annotated section 36-1-111(o)(3)(A) also provides:

Except as provided in subdivisions (o)(2) and (4), a validly executed surrender shall confer jurisdiction of all matters pertaining to the child upon the court where the surrender is executed or filed until the filing of the adoption petition, at which time jurisdiction of all matters pertaining to the child shall transfer to the court where the adoption petition is filed; provided, that the jurisdiction of the juvenile court to adjudicate allegations concerning any

- 17 -

from the adoption action by stating that they shall be suspended "pending the court's orders in the adoption proceeding" and that actions so suspended "shall not be heard until final adjudication of the action for termination of parental rights or adoption . . . even if such adjudication of the termination of parental rights or adoption will render the custody, guardianship, or visitation action moot." Tenn. Code Ann. § 36-1-116(f)(2). In *In re K.A.Y.*, 80 S.W.3d 19, 25 (Tenn. Ct. App. 2002), for example, this Court explained that a trial court was not required to decide a pending custody petition before it decided an adoption petition, explaining that the adoption statute gives "priority" to the petition for adoption and that the pending custody matter is suspended. This serves "the legislative intent of the adoption statutes, outlined by Tenn. Code Ann. § 36-1-101(a), especially the interest of 'achiev[ing] permanency, consistent with the child's best interests, at the earliest possible date[.]" *Id.* at 26. *See also In re Neveah W.*, 525 S.W.3d 223, 243 (Tenn. Ct. App. 2017) ("Pursuant to the adoption statute, 36-1-116(f), any separate proceedings seeking guardianship of the child should have been suspended pending the court's orders in the adoption proceeding and should not have been heard until final adjudication of the adoption action."); *In re Lyric J.*, No. M2014-00806-COA-R3-PT, 2014 WL 7182075, at *8 (Tenn. Ct. App. Dec. 16, 2014) ("[T]he custody proceedings pending in Davidson County Juvenile Court were suspended pending the court's orders in the adoption proceeding.") (internal quotation omitted).

In this case, the chancery court transferred the two cases pending before it to circuit court. However, the transfer alone did not accomplish consolidation. For instance, in *Brooks v. Woody*, 577 S.W.3d 529, 530, 532-33 (Tenn. Ct. App. 2018), two lawsuits were "transferred to the Trial court" but had separate docket numbers and "never were formally consolidated for purposes of trial, let alone joined together as one action." The trial court had chosen to adjudicate motions in the two cases together, "evidently for pragmatic purposes," but "the lawsuits remained separate regardless of this economical approach, and resolution of both was not necessary to render a final judgment in one." *Id.* at 533. *See also Bruce v. Jackson*, No. E2018-01997-COA-R3-CV, 2019 WL 2157938, at *7 n.4 (Tenn. Ct. App. May 17, 2019) (noting that "upon transfer" of an action the court would have discretion to consolidate the two actions under Rule 42.01); *Van Zandt v. Dance*, 827 S.W.2d 785, 786 (Tenn. Ct. App. 1991) (concluding that a judge had authority to transfer a case to another division but no authority to order that case consolidated with a case pending in the other division).[6]

Again, from our review of the record, the circuit court did not enter any order formally consolidating the cases transferred from chancery court with the adoption proceeding in circuit court. However, some of the post-adoption orders simply listed all

delinquent, unruly, or truant acts of a child pursuant to title 37 shall not be suspended.

[6] Also, in the procedural history section of *In re Taylor B.W.*, 397 S.W.3d 105, 107-08 (Tenn. 2013), our Supreme Court noted that the trial court had consolidated a termination and adoption case with a visitation case but "suspended all proceedings seeking to enforce visitation rights pending the trial court's order in the adoption proceeding" pursuant to Tennessee Code Annotated section 36-1-116(f)(2).

three docket numbers with the word "consolidated." Even if we presume that the circuit court ruled that the actions would be consolidated or heard jointly pursuant to Rule 42.01, the fact remains that the three actions were still separate actions. Consolidation "does not create one action or make those who are parties in one suit parties in another." *City of New Johnsonville*, 2005 WL 1981810, at * 9 (emphasis omitted). In practice, the circuit court proceeded in a manner consistent with this rule by considering the Smiths' motion to intervene in the adoption case and denying their motion for intervention in that action. The Smiths were not parties to the adoption case simply by virtue of the transfer. Even if the trial court treated the cases as consolidated for some hearings, they "remained distinct and separate lawsuits throughout the proceedings below." *See id.* at *10. "The consolidation of cases does not merge them into one action, it merely allows [a court] to hear multiple cases at the same time." *In re Bridgestone/Firestone*, 495 S.W.3d 257, 267 (Tenn. Ct. App. 2015). In that situation, "'the issues remain precisely on the pleadings as they were before, and between the same parties, and are to be determined exactly as if the cases had been heard separately.'" *Id.* (quoting *Webb v. Poynter*, No. 02A01-9707-CV-00168, 1999 WL 145257, at *4 (Tenn. Ct. App. Mar. 18, 1999)).

In order to determine what issues are properly before this Court on appeal, we must examine the circuit court's orders and the notice of appeal filed by the Smiths. *See Rainbow Ridge Resort, LLC v. Branch Banking & Tr. Co.*, 525 S.W.3d 252, 258-59 (Tenn. Ct. App. 2016) (explaining that consolidated lawsuits "remain separate actions" and therefore an appeal of an order in a circuit court case did not constitute an appeal of the consolidated chancery court case). Here, the circuit court's order listing all three docket numbers dismissed the Smiths' petition to revoke the surrender and for money damages filed in chancery court and also denied the Smiths' motion to alter or amend the order denying intervention in the adoption case as moot. After resolution of the post-judgment motions, the Smiths filed a notice of appeal listing only the docket number for the circuit court adoption case. However, the notice of appeal listed the style of the case as "D[.] Smith, Sr., P[.] Smith, and D[.] Smith, Jr. v. Bethany Christian Services, Inc. and [Mr. and Mrs.] A[.]" This was the style of the Smiths' petition filed in the chancery court surrender proceeding, not the adoption petition filed by Mr. and Mrs. A. in circuit court.

This Court considered an analogous situation involving an inconsistent notice of appeal in *Johnson v. Ragsdale*, 158 S.W.3d 426 (Tenn. Ct. App. 2004). In that case, an appellant filed a notice of appeal from a judgment of the general sessions court to the circuit court. *Id.* at 426-27. The notice of appeal correctly listed the date of the order appealed but erroneously listed the docket number of an earlier general sessions suit that had been voluntarily nonsuited. *Id.* at 427. The circuit court dismissed the appeal for lack of jurisdiction. *Id.* On appeal, we explained that "a notice of appeal should sufficiently describe or specify the judgment or order appealed from, but 'a mistake in designating the judgment appealed from is not fatal, so long as the intent to appeal from a specific ruling can fairly be inferred and so long as the other party is not misled or prejudiced.'" *Id.* at 428 (citing 5 Am. Jur. 2d *Appellate Review* § 335 (1995)). Thus, a notice of appeal will be

deemed "'sufficient if, although defective, the notice adequately describes or identifies the judgment or order, and appellee is not misled, in which case the court will disregard mere clerical errors, surplusage, and other mistakes.'" *Id.* (quoting 4 C.J.S. *Appeal and Error* § 375). Given the correct date of judgment on the notice of appeal, we concluded that "the incorrect docket number is merely a technical error." *Id.* at 429. The appellees' substantive arguments indicated that they were not misled about which judgment was being appealed. Therefore, we reversed and remanded for further proceedings. *Id.*

In the case before us, the notice of appeal lists only the docket number for the circuit court adoption case, but all of the issues raised by the Smiths and the appellees relate to the chancery court petition to revoke the surrender and for damages. Their issues involve the motion to alter or amend regarding the claim for monetary damages, the timeliness of the petition to revoke the surrender, the merits of the claim for intentional infliction of emotional distress, and the trial court's award of attorney fees to the appellees based on the dismissal of the chancery court petition. The issues raised on appeal do not relate to the trial court's rulings in the termination and adoption case, regarding intervention or otherwise. As such, it is apparent to this Court that the Smiths intended to appeal the chancery court surrender proceeding, as reflected on their notice of appeal listing the style of that case. It is also clear that the appellees were not misled or prejudiced by the listing of the docket number for the circuit court case. In fact, their brief states, "This case was dismissed on a Rule 12.02(6) motion to dismiss." The appellees responded to each of the issues raised by the appellees regarding the chancery court petition and raised issues of their own, and BCS even filed a motion to correct the record to include the documents from the chancery court proceeding. As a result, we will proceed to consider the issues raised on appeal by both parties as they relate to the chancery court case.[7]

## C. *Motion to Alter or Amend*

On appeal, the appellees argue that the Smiths failed to file a proper motion to alter

---

[7] We must note that according to Tennessee Code Annotated section 36-1-116(f), the motions to dismiss that were pending in the chancery court surrender proceeding should not have been resolved until final adjudication of the adoption action. *See* Tenn. Code Ann. § 36-1-116(f)(2) ("Actions suspended by this section, regardless of the stage of adjudication, shall not be heard until final adjudication of the action for termination of parental rights or adoption regarding the same child, even if such adjudication of the termination of parental rights or adoption will render the custody, guardianship, or visitation action moot."). There was no "final adjudication" of the adoption action when the Smiths' motion to alter or amend the order denying intervention remained pending. As such, the motion to alter or amend the order denying intervention should have been resolved before the chancery court matters. We do not condone the practice of bypassing the clear directive of the statute. However, at this point, we are mindful of the fact that the parties agreed on the course of action taken by the circuit court and raise no issue on appeal regarding that action. We also note that the Smiths chose not to pursue their constitutional challenge to section 36-1-116 based on the agreed course of action. Given these factors, and because we characterize this appeal as one from the chancery court case, we will not address the issue further. However, this procedure should not be used in future cases.

- 20 -

or amend within thirty days of the trial court's order, and therefore, their notice of appeal was untimely. To briefly recap the relevant timeline, the trial court's order of dismissal was entered on May 27, 2020. On June 19, the Smiths filed a "Rule 59 Motion to Alter or Amend the Order Granting Motion for Summary Judgment and Motions to Dismiss." This motion was very sparse and erroneously stated that the order of dismissal was "silent as to whether or not the claim for monetary damages has been dismissed." It sought "clarification as to whether or not the claims regarding monetary damages have been dismissed." On July 6, more than thirty days after the May 27 order, the Smiths filed an amended motion to alter or amend. The amended motion conceded that the May 27 order stated that all claims for monetary damages were dismissed. However, the amended motion maintained that there was nothing in the order specifically addressing the claim for intentional infliction of emotional distress and that a detailed analysis had been provided for the other claims for monetary damages. The Smiths insisted that they had properly alleged all elements of a claim for intentional infliction of emotional distress and that the issue was not appropriate for resolution on a motion to dismiss. They asked the court to alter or amend its order to allow the claim for intentional infliction of emotional distress to proceed or to clarify the reasons for dismissal of that claim.

In the circuit court's order denying the motion, it correctly noted that courts must look to the substance of a motion rather than its title. Although the Smiths had titled their motions as "Rule 59" motions, the court concluded that in substance they "only seek clarification of this Court's ruling." The circuit court concluded that a motion for "clarification" does not qualify as a proper Rule 59 motion and is not contemplated by the Tennessee Rules of Civil Procedure. Because the order of dismissal did not contain any clerical errors, there was no change in the law or new evidence, and the order clearly addressed all claims, the court denied the motion.

"[C]ertain post-trial motions, such as a motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59.04, if timely filed, toll commencement of the thirty-day period [for filing a notice of appeal] until an order granting or denying the motion is entered." *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004) (citing Tenn. R. App. P. 4(b); *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003)). However, we "must consider the substance of a motion in determining whether it is in fact one of the specified post-trial motions which toll commencement of the time." *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). Notably, at this point, the issue is not whether the trial court correctly denied the motion but instead whether the motion "was one recognized under Rule 59." *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 826 (Tenn. Ct. App. 2012). To do so, we "'must parse through the body of the motion to determine whether it requests the sort of relief available through'" a motion to alter or amend. *Stokely v. Stokely*, No. E2017-00433-COA-R3-CV, 2018 WL 485998, at *4 (Tenn. Ct. App. Jan. 19, 2018) (quoting *Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *4-5 (Tenn. Ct. App. Feb. 10, 2016)).

"A motion to alter or amend should 'be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice.'" *U.S. Bank*, 410 S.W.3d at 826 n.2 (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). Such a motion "'should not be used to raise or present new, previously untried or unasserted theories or legal arguments.'" *Id.* (quoting *In re M.L.D.*, 182 S.W.3d at 895). Additionally, a Rule 59.04 motion is not simply an opportunity "to re-litigate the issues previously adjudicated" by the trial court. *Burris v. Burris*, 512 S.W.3d 239, 247 (Tenn. Ct. App. 2016).

This Court considered the sufficiency of a motion much like the one before us in *Clear Water Partners, LLC v. Benson*, No. E2016-00442-COA-R3-CV, 2017 WL 376391 (Tenn. Ct. App. Jan. 26, 2017). That case involved claims for tortious interference with business relationships, tortious interference with contract, and civil conspiracy. *Id.* at *2. During a hearing on the defendants' motions to dismiss, the trial judge had observed that "this whole thing is founded upon a breach of contract." *Id.* at *3. After the trial court entered its order of dismissal, the plaintiff filed a Rule 59 motion pointing out that its complaint also included a claim for tortious interference with business relationships in addition to its claim for tortious interference with contract and arguing that the business relationships claim did not have to meet the same requirements. *Id.* The defendants moved to strike the motion to alter or amend, arguing that it was essentially "an unauthorized motion for reconsideration rather than a true motion to alter or amend." *Id.* The trial court agreed that the motion was substantively one for reconsideration and struck the motion. *Id.* On appeal, the defendants argued that this Court lacked jurisdiction because the motion was not a valid motion to alter or amend under Rule 59.04. *Id.* at *12. This Court disagreed. The plaintiff had "argued in its motion that the trial court *failed to address* its claim for tortious interference with business relationships." *Id.* at *11 (emphasis added). We explained,

> The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005); *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998). Such a motion "permits the trial court to revisit and rectify errors that were made when the court overlooked or failed to consider certain matters." *Morrison v. Morrison*, 2002 WL 31423848, at *2 (Tenn. Ct. App. Oct. 29, 2002).

*Id.* at *12 (quoting *Baxter v. Heritage Bank & Trust*, No. M2012-02689-COA-R3-CV, 2014 WL 1118072, at *3 (Tenn. Ct. App. March 19, 2014)). Rule 59 motions "'prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors before a judgment becomes final.'" *Id.* (quoting *Byrnes v. Byrnes*, 390 S.W.3d 269, 275 (Tenn. Ct. App. 2012)). In arguing that the trial court had failed to address one of its claims,

- 22 -

the plaintiff was not simply asking the trial court to "change its mind and accept the Plaintiff's argument." *Id.* at \*13. Instead, the plaintiff was properly moving the trial court "to address what it considered to be a clear error of law and/or injustice, thereby providing the trial court with an opportunity to correct any errors before its judgment became final and avoiding an unnecessary appeal." *Id.* Therefore, we held that the motion was properly filed pursuant to Rule 59.04 and tolled the time for filing an appeal. *Id. See also In re March 9, 2012 Order*, No. W2019-01923-COA-R3-CV, 2020 WL 7861377, at \*3 (Tenn. Ct. App. Dec. 22, 2020) *perm. app. denied* (Tenn. Apr. 8, 2021) (concluding that a motion was "at least in part . . . a legitimate motion to alter or amend" where the appellant arguably "moved the trial court to address what [he] considered to be a clear error of law and/or injustice, thereby providing the trial court with an opportunity to correct any errors before its judgment became final and avoiding an unnecessary appeal").

In the case at bar, the Smiths' motion to alter or amend argued that the trial court's order was silent as to its claims for monetary damages. Their amended motion argued that there was nothing in the order specifically addressing the claim for intentional infliction of emotional distress. The issue at this juncture is not whether the Smiths were right or wrong in their assertions. Rather, the issue is whether their motions were of the type "recognized under Rule 59." *U.S. Bank*, 410 S.W.3d at 826. We conclude that they were. A Rule 59 motion "permits the trial court to revisit and rectify errors that were made when the court overlooked or failed to consider certain matters." *Clear Water*, 2017 WL 376391, at \*12 (quotation omitted). Therefore, the time for filing a notice of appeal was tolled, and the notice of appeal was timely filed.

### D. Petition to Revoke Surrender

The next issue we address is the Smiths' contention that the discovery rule should apply to delay the thirty-day time period for filing a complaint to invalidate a surrender based on fraud under Tennessee Code Annotated section 36-1-112.

Like the trial court, this Court has had difficulty interpreting the Smiths' precise argument. In their brief on appeal, the Smiths state that "Appellants executed a surrender of the minor child," which they later sought to revoke. The brief also states that "the Smiths" would not have entered into "the surrender agreement" if not for the promises that they would be allowed to maintain a relationship with the child. However, it appears to this Court that the only person who executed a "surrender" within the meaning of Tennessee law was D. Smith, Jr.

"Tennessee law provides a mechanism for parents to surrender parental rights voluntarily under certain circumstances." *In re Angela E.*, 303 S.W.3d 240, 247 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-111). Tennessee Code Annotated section 36-1-102(50) provides the following definition of a "surrender":

"Surrender" means a document executed under § 36-1-111, or under the laws of another state or territory or country, *by the parent or guardian of a child, by which that parent or guardian relinquishes all parental or guardianship rights of that parent or guardian to a child,* to another person or public child care agency or licensed child-placing agency for the purposes of making that child available for adoption[.]

(emphasis added). Mr. and Mrs. Smith were not parents of the child, nor were they her guardians. From the time they received legal custody during the dependency and neglect proceeding in 2016 until they relinquished their right to custody in May 2018, the relevant definition of a "guardian" provided:

(A) "Guardian" or "guardians" or "co-guardian" or "co-guardians" means a person or persons or an entity, other than the parent of a child, appointed by a court or defined by law *specifically as "guardian"* or "co-guardian" or "conservator" to provide supervision, protection for and care for the person or property, or both, of a child or adult;
(B) "Guardian" or "co-guardian" also means a person or entity appointed as guardian or guardians as the result of a surrender, parental consent, or termination of parental rights[.]

Tenn. Code Ann. § 36-1-102(24) (2016) (emphasis added).[8] As Mr. and Mrs. A. aptly noted during the proceedings below, the juvenile court order from 2016 found that it was in the best interest of the child to place her in "the joint custody of the paternal grandparents," but it did not appoint them as her guardians. *See In re Adoption of M.L.S.*, No. E2019-01918-COA-R3-CV, 2020 WL 6129180, at *4 (Tenn. Ct. App. Oct. 16, 2020) (rejecting an argument that an aunt and uncle had "guardian responsibilities" and were "in essence the definition of being a guardian" when the relevant order only granted them visitation rights and they "were never appointed or defined by law specifically as the child's guardian or conservator"); *In re Ashton B.*, No. W2015-01864-COA-R3-PT, 2016 WL 981320, at *9 (Tenn. Ct. App. Mar. 15, 2016) (concluding that an individual "had clearly not been appointed the child's guardian, co-guardian, or conservator" under the statutory definition).

Although the document signed by Mr. and Mrs. Smith does not appear in the record before us, the Smiths' brief does at one point refer to "the signed surrender *and affidavits* completed by the Appellants." (emphasis added). Their reply brief mentions "the Surrender and accompanying Affidavit of Consent." The circuit court's order in this case states that Mr. and Mrs. Smith executed an "Affidavit of Consent" waiving their custodial rights to the child on May 15, 2018, she was placed in the custody of Mr. and Mrs. A. on

---

[8] The statutory definition of a guardian has since been amended.

May 25, and Smith, Jr. executed a voluntary surrender of parental rights on May 31. As such, Mr. and Mrs. Smith did not execute a "surrender" of parental or guardianship rights under Tennessee law.

We note that the surrender statute, Tenn. Code Ann. § 36-1-111, contains a form to be executed by the accepting party in the surrender proceeding, and it requires the accepting party to check a box indicating one of the following:

> 5. a. _____ I/We have physical custody of this child; or
> b. _____ I/We will receive physical custody of the child from the parent or legal guardian within five (5) days of this surrender; or
> c. _____ I/We have the right to receive physical custody of the child upon his or her release from a hospital or health care facility; or
> d. _____ Another person or agency currently has physical control of the child. *I/We have presented to the court an affidavit of the person or agency required by T.C.A § 36-1-111(d)(6) which indicates their waiver of right to custody of the child upon entry of a guardianship order pursuant to T.C.A. § 36-1-111(o).*

(emphasis added). Subsections (d)(5) and (d)(6) then provide:

> (5) Unless the surrender or parental consent is made to the physical custodian or *unless the exceptions of subdivision (d)(6) otherwise apply*, no surrender or parental consent shall be sufficient to make a child available for adoption in any situation where any other person or persons, the department, a licensed child-placing agency, or other child-caring agency in this state or any state, territory, or foreign country is exercising the right to physical custody of the child under a current court order at the time the surrender is sought to be executed or when a parental consent is executed, or when those persons or entities have any currently valid statutory authorization for custody of the child.
> (6) *No surrender shall be valid unless the person or persons or entity to whom or to which the child is surrendered or parental consent is given:*
> (A) Has, at a minimum, physical custody of the child;
> (B) Will receive physical custody of the child from the surrendering parent or guardian within five (5) days of the surrender;
> (C) Has the right to receive physical custody of the child upon the child's release from a health care facility; or
> (D) *Has a sworn, written statement from the person, the department, the licensed child-placing agency, or child-caring agency that has physical custody pursuant to subdivision (d)(5), which waives the rights pursuant to that subdivision (d)(5).*

- 25 -

Tenn. Code Ann. § 36-1-111(d) (emphasis added).  Again, the "Affidavit of Consent" is not in the record before us, but it may have been executed in connection with these requirements.  Still, the affidavit and waiver of custodial rights does not itself meet the definition of a "surrender."

The dispositive issue before us is whether there was a timely attempt to revoke the surrender of parental rights executed by Smith, Jr. pursuant to Tennessee Code Annotated section 36-1-112, the statute governing revocation of a surrender.[9]  It provides:

> (a)(1)(A) A person who executed a surrender may revoke the surrender at any time within three (3) calendar days of the date of the surrender. . . .
> (B) The surrender shall be revoked by appearing before the judge who accepted the surrender or that judge's successor or substitute, or another judge of a court with jurisdiction to accept a surrender in the absence of the judge who accepted the surrender or that judge's successor or substitute, or by appearing before the person, or that person's successor, pursuant to § 36-1-111(g), (h) or (i) before whom the surrender was executed and by executing the revocation of surrender form.
> (C) The three-day period for revocation of the surrender shall not limit the court's authority to order the revocation of the surrender pursuant to § 36-1-118.[10]
> (D) The revocation of the surrender shall be executed under oath by the

---

[9] We express no opinion as to the standing of Mr. and Mrs. Smith to petition to set aside the surrender executed by Smith, Jr.  The parties raise no issue on appeal regarding standing, and because Smith, Jr. joined the petition himself, the standing of his parents is not outcome determinative.

[10] Tennessee Code Annotated section 36-1-118(a) provides

> If at any time between the surrender of a child directly to prospective adoptive parents or a licensed child-placing agency and the filing of an adoption petition or at any time between the filing of an adoption petition and the issuance of the final order of the adoption, it is made known to the court on the basis of clear and convincing evidence that circumstances are such that the child should not be adopted, the court may dismiss the adoption proceedings or, if no adoption proceedings have been commenced, the court may order the surrender or parental consent to prospective adoptive parents to be revoked and may modify or dismiss any order of guardianship previously entered, and may order the reinstatement of parental rights, all in consideration of the best interests of the child.

The Smiths' petition to revoke the surrender did not cite any statutory basis for the petition but asserted that the Smiths had been "fraudulently induced into surrendering their child."  Their amended petition added a sentence stating that it was not in the best interest of the child to be adopted but still failed to cite any statutory basis for the petition.  The circuit court construed the petition as being filed pursuant to Tennessee Code Annotated section 36-1-112(c).  The Smiths do not present any issue on appeal regarding the applicability of section 118.  Rather, the issue they present is whether the period for filing "a fraud claim" was delayed until the discovery of the fraud.  Therefore, we have limited our analysis to whether the Smiths timely filed a complaint pursuant to section 36-1-112(c).

parent or guardian who executed the surrender of the child, and the judge or other person who accepted the surrender or the judge's successor or substitute as indicated in subdivision (a)(1)(B) shall sign and date the revocation form.

. . . .

(F)(i) No surrender may be revoked by the person surrendering the child or set aside by a court after the expiration of the three-day period *except as the surrender may be invalidated by court order entered pursuant to a timely filed complaint filed pursuant to subsection (c)* or as permitted by order of the court entered pursuant to § 36-1-118.

. . . .

(c) After the revocation period has expired . . . , no surrender . . . shall be set aside by a court except upon clear and convincing evidence of duress, fraud, intentional misrepresentation or for invalidity under § 36-1-111(d), and no surrender . . . may be set aside for any reason under this part unless the action based on these grounds is initiated within thirty (30) days of the execution of the surrender . . . .

Tenn. Code Ann. § 36-1-112 (emphasis added). The Smiths' brief concedes that "Appellant's son, D[.] Smith, Jr., executed a surrender of parental rights, and, that same day, an order of partial guardianship was then awarded to Appellees on May 31, 2018." They also concede that Mr. and Mrs. Smith filed a petition to revoke the surrender on November 2, 2018, and Smith, Jr. was added as a petitioner via a second amended petition on November 15, 2018. Thus, it is clear that there was no attempt to set aside the surrender within thirty days of its execution. The Smiths argue, however, that the discovery rule should apply to toll the running of the thirty-day period until the fraud is discovered. They admit that no Tennessee case has applied the discovery rule to such an action. Regarding the statute, this Court has stated that after the expiration of the initial revocation period, "a parent's right to revoke the surrender is limited by subsection ([c])." *McCann v. Weathers*, No. 02A01-9704-CH-00092, 1997 WL 607491, at *4 n.4 (Tenn. Ct. App. Oct. 1, 1997) (citing Tenn. Code Ann. § 36-1-112(a)(1)(F)(I) (1996)).[11] "Although subsection ([c]) permits a surrender to be set aside upon clear and convincing evidence of duress, fraud, intentional misrepresentation, or other specified invalidities, any action to revoke a surrender under subsection ([c]) must be initiated within thirty days of the surrender's execution." *Id.* (citing Tenn. Code Ann. § 36-1-112 (1996)).

According to the Tennessee Supreme Court,

The discovery rule was first announced in *Teeters v. Currey*, 518 S.W.2d 512, 515 (Tenn. 1974), a medical malpractice case. It provides that

---

[11] The language now found in subsection (c) was formerly designated as subsection (d). *See* 2018 Tenn. Laws Pub. Ch. 875 § 33 (H.B. 1856) (deleting the former subsection (b) in its entirety).

the statute of limitations begins to run when the injury is discovered, or in the exercise of reasonable care and diligence, the injury should have been discovered. The rule responds to the unfairness of "requiring that he [a plaintiff] sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable." *Id*. at 515. Since its announcement in *Teeters*, the discovery rule has been applied to various tort actions including products liability, legal malpractice, and dental malpractice actions. *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn. 1986); *Foster v. Harris*, 633 S.W.2d 304 (Tenn. 1982); *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975).

In contrast to the rationale for the discovery rule are the policy reasons for the development of statutes of limitations to ensure fairness to the defendant by preventing undue delay in bringing suits on claims, and by preserving evidence so that facts are not obscured by the lapse of time or the defective memory or death of a witness. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990); *Teeters*, 518 S.W.2d at 515; *see generally Developments in the Law: Statutes of Limitations*, 63 Harv. L. Rev. 1176, 1185 (1950). When determining whether to apply the discovery rule, this court considers the specific statutory language at issue, and balances the policies furthered by application of the discovery rule against the legitimate policies upon which statutes of limitations are based. *Potts*, 796 S.W.2d at 684.

*Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994). The Court also found it necessary to examine the development of the area of law at issue, which was, in that case, defamation. *See id.*

Even assuming arguendo that the thirty-day period set forth in Tennessee Code Annotated section 36-1-112 would be considered a statute of limitations, we find no basis for applying the discovery rule. *See Snake Steel, Inc. v. Holladay Constr. Grp., LLC*, 625 S.W.3d 830, 837 (Tenn. 2021) (noting that the plaintiff "cite[d] no cases in which the discovery rule has been applied to a claim for penalties, as opposed to compensation for injury or harm," but concluding that the discovery rule did not apply "[r]egardless").

Looking first at the statutory language, it plainly states that "[n]o surrender may be revoked by the person surrendering the child or set aside by a court after the expiration of the three-day period except as the surrender may be invalidated by court order entered pursuant to *a timely filed complaint filed pursuant to subsection (c)* or as permitted by order of the court entered pursuant to § 36-1-118." Tenn. Code Ann. § 36-1-112(a)(1)(F)(i) (emphasis added). Subsection (c) then states unequivocally:

> After the revocation period has expired . . . , no surrender . . . shall be set
> aside by a court except upon clear and convincing evidence of duress, fraud,

intentional misrepresentation or for invalidity under § 36-1-111(d), *and no surrender . . . may be set aside for any reason under this part unless the action based on these grounds is initiated within thirty (30) days of the execution of the surrender . . . .*

Tenn. Code Ann. § 36-1-112(c) (emphasis added).  This language leaves no room for application of the discovery rule.  As the circuit court noted, applying the discovery rule would be "contrary to the clear and unambiguous language of the statute."

Consideration of "the policies furthered by application of the discovery rule against the legitimate policies upon which statutes of limitations are based" leads to the same conclusion. *Quality Auto*, 876 S.W.2d at 820; *see, e.g.*, *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 624 (Tenn. 2002) (concluding that the policies of "certainty and finality" were best served by refusing to apply the discovery rule to claims for conversion of negotiable instruments).  In the field of surrender and adoption, the need to prevent undue delay in bringing suits is of the utmost importance.  Indeed, when rejecting a Rule 60 challenge to a surrender, our supreme court stated that "[t]he principle of finality is of paramount importance in this area of the law." *Killion v. Tenn. Dep't of Hum. Servs.*, 845 S.W.2d 212, 214 (Tenn. 1992); *see also* 8 Am. Jur. Proof of Facts 2d 481 ("There is undoubtedly no other field of law where the importance of finality of determination is greater than in the field of child adoption.").  A "primary purpose" of Tennessee's adoption statutes is to ensure that "adoption proceedings are held in an expeditious manner to enable the child to achieve permanency, consistent with the child's best interests, at the earliest possible date" and that "[t]he adopted child is protected in the child's adoptive relationship from any interference by any person who may have some legal claim after the child has become properly adjusted to the child's adoptive home."  Tenn. Code Ann. § 36-1-101(a)(5)-(6).  At the same time, the need to "[p]rotect biological parents and guardians of children from decisions concerning the relinquishment of their parental or guardian's rights to their children or wards that might be made as a result of undue influence or fraud" is designated as a "secondary purpose" of the adoption statutes.  Tenn. Code Ann. § 36-1-101(b)(1); *see also Matter of Bishop*, 678 S.W.2d 471, 472 (Tenn. Ct. App. 1984) (observing that in section 36-1-101 the legislature had "declared its intent to protect adopted children 'from interference, long after they have become adjusted to their adoptive homes, by natural parents who may have some legal claim because of a defect in the adoption proceeding'").

In section 36-1-112, the legislature expressly considered the possibility that a surrender would be challenged on the basis of "duress, fraud, [or] intentional misrepresentation" but yet chose to impose a strict thirty-day time period for seeking to set aside a surrender "based on these grounds." Tenn. Code Ann. § 36-1-112(c). *See Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004) (observing that the "shortened, specific limitations period" of six months for slander actions "reflect[ed] the legislature's judgment that special circumstances surround a claim for slander that call for a shorter limitations

- 29 -

period than most other torts"). Applying the discovery rule would indefinitely extend the time period for setting aside a surrender and undermine the primary purposes of the adoption statutes.[12] Therefore, we find no basis for applying the discovery rule to toll the thirty-day period for seeking to set aside a surrender based on fraud. Smith, Jr.'s petition to revoke his surrender was untimely and was properly dismissed by the circuit court.[13]

[12] The Appellate Court of Illinois rejected the application of the discovery rule under similar circumstances in *Street v. Hubert*, 491 N.E.2d 29 (Ill. App. Ct. 1986). There, the plaintiff mother alleged that she had an oral agreement with the defendant adoptive parents in which she consented to adoption subject to certain conditions, including that she would be allowed visitation with the child in the future. *Id.* at 30. Six years after the adoption, the mother brought an action seeking to set aside the adoption decree and enforce the terms of the oral agreement. *Id.* The mother alleged that she had been allowed visitation in accordance with the agreement for the first few years, until the spring of 1983. *Id.* The applicable statute provided, "No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." *Id.* (quoting Ill. Rev. Stat. 1983, ch. 40, par. 1513). The mother argued that the discovery rule should apply such that the applicable period "did not begin to run until the spring of 1983 when she first discovered that the defendants allegedly committed fraud in obtaining her consent to the adoption." *Id.* at 31. Like the Smiths, the mother relied on cases involving "fraud actions in general." *Id.* However, the Illinois Court deemed the discovery rule "inappropriate to the instant action." *Id.* The Court explained:

> The discovery rule will not be applied where to do so would undermine the purpose of the statute's time limitations period. We believe that the instant case is a prime example of where to permit the action would frustrate the purpose of the Adoption Act which is to promote stable family relationships free from unnecessary intrusion. The 1982 amendment to the Act was designed to accomplish this objective by cutting off the prolonged ability of the natural parents to set aside an adoption decree. The legislature sought to eliminate this threat by shortening the period from five years under the general limitations statute to include the instant amendment to reduce the period to one year from the time the adoption decree was executed. If we accepted the plaintiff's position, allowing an action to set aside an adoption decree from the time of discovery of the fraud would in effect render adoption decrees vulnerable indefinitely to attack. This result would be inconsistent with the aims of the amendment and the overall purpose of the Act.

*Id.* (citations and quotations omitted).

[13] It is not entirely clear to this Court what relief the Smiths sought. Their initial brief on appeal stated, "The Appellants are not wishing to set up a permanent parenting plan with split custody, Appellants simply wish to remain a part of the minor child's life in some capacity moving forward." However, their reply brief stated, "the Smiths are requesting the Court to set aside the Surrender and deem the adoption of the minor child void; the Smiths are not requesting that any pre-adoption agreement between themselves and Appellees be enforced." We recognize that Tennessee Code Annotated section 36-1-122 addresses the binding effect of an adoption:

> (a) When a child is adopted pursuant to this part, the adoptive parents shall not thereafter be deprived of any rights in the child, at the insistence of the child's biological or prior legal parents or guardian of the child or any other person or agency except in the same manner and for the same causes as are applicable in proceedings to deprive biological or legal parents or guardians of their children or wards as provided by law.
> (b)(1) After the final order of adoption is entered, no party to an adoption proceeding, nor

### E.    Claim for Damages for Intentional Infliction of Emotional Distress

The next issue raised by the Smiths is stated in their brief as follows: "Was the Dismissal of Appellants' Claims for Monetary Damages proper? Specifically, the Intentional Infliction of Emotional Distress claim which went unaddressed in the Circuit Court's Order?" The petition they filed in chancery court requested in its prayer for relief "a monetary judgment in the amount of $50,000 for compensatory damages for Intentional and Negligent infliction of Emotional Distress and for $50,000 in punitive damages for fraudulent inducement into a contract for the surrender of a minor child." In their brief on appeal, the Smiths vaguely assert that they "clearly pled all elements required for each tort alleged," but the only cause of action they actually analyze with citations to relevant authority and any discussion of specific elements is intentional infliction of emotional distress. As the appellees noted in their brief, the Smiths' brief contained no analysis of claims for fraudulent inducement or negligent infliction of emotional distress. As such, any argument regarding those issues is waived. *See Sneed v. Bd. of Prof'l Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.")

The Smiths argue that their claim for intentional infliction of emotional distress "went unaddressed in the circuit court's Order dismissing the Appellant's claims." They assert that their petition "clearly alleged all elements of an Intentional Infliction of Emotional Distress claim, and the trial court completely disregarded this claim in its order dismissing the case." Thus, the Smiths suggest that the trial court's order is not a final judgment. In response, the appellees contend that the order "clearly addressed all claims" and concluded that the gravamen of the complaint was one for breach of contract.

To the extent that the Smiths suggest their claim went unresolved, we disagree. To begin, we note the limited nature of the allegations in the petition to revoke surrender "and for money damages" filed by the Smiths in the surrender proceeding. After setting forth

---

anyone claiming under such party, may later question the validity of the adoption proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound by the order, except for such appeal as may be allowed by law.

(2) In no event, for any reason, shall an adoption be overturned by any court or collaterally attacked by any person or entity after one (1) year from the date of entry of the final order of adoption by a court of competent jurisdiction. This provision is intended as a statute of repose.

However, no party to this appeal has raised any argument or issue regarding the applicability of this statute, and given our resolution of the issues raised on appeal, it is not necessary to consider the implications of this statute.

the factual allegations in their petition, in which they mentioned fraudulent inducement, the Smiths' petition simply stated:

> 18. The Petitioners have experienced significant psychological and emotional distress by being kept from the minor child who is the subject of this litigation.

Within the allegations of the petition, there was *no mention* of any claim for intentional infliction of emotional distress or further attempt to address the elements of such a claim. The petition's prayer for relief simply requested a "judgment in the amount of $50,000 for compensatory damages for Intentional and Negligent infliction of Emotional Distress."

In its order of dismissal, the circuit court noted that the petition sought damages for negligent and intentional infliction of emotional distress and fraudulent inducement but, perhaps due to the scarcity of the allegations, it found that "the gravamen of their complaint is a breach of contract." The court found that allowing "any cause of action to proceed" based on an alleged breach of an agreement for post-adoption visitation would contradict Tennessee Code Annotated section 36-1-121(f). The circuit court's order unequivocally stated that "[f]or all of these reasons, the Smiths have failed to state a claim upon which relief can be granted for any claims for money damages and therefore, these causes of action must be dismissed." Thus, the circuit court clearly addressed all claims.

As for the merits of the dismissal, the appellees argue that the circuit court was correct in its application of Tennessee Code Annotated section 36-1-121. However, the appellees alternatively argue that the Smiths' claim for intentional infliction of emotional distress was properly dismissed because their allegations failed to state a claim upon which relief could be granted. According to the appellees, even taking the Smiths' allegations as true, "they do not state a claim for intentional infliction of emotional distress." We agree.

The Tennessee Supreme Court considered whether a complaint sufficiently alleged all of the elements of a claim for intentional infliction of emotional distress in *Leach v. Taylor*, 124 S.W.3d 87, 91-92 (Tenn. 2004). The Court explained:

> We outlined the three elements that a plaintiff must allege to make a prima facie showing of intentional infliction of emotional distress in *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997). "[U]nder Tennessee law, there are three essential elements to a cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Id.* at 622.
> As to the second element, we noted in *Bain* that Tennessee has adopted the definition of outrageous conduct given in the Restatement (Second) of Torts:

- 32 -

The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Id.* at 623.

The question before us is whether Plaintiffs' complaint alleges these three elements and so states a cause of action for intentional infliction of emotional distress.

The Court noted that "merely reciting the legal conclusion of 'outrageous conduct' alone will not suffice." *Id.* at 93.

As we have said before,

[W]hile the threshold for surviving a motion to dismiss for failure to state a claim upon which relief can be granted is "generally low," the plaintiff is not thereby absolved from making appropriate allegations in his or her complaint:

[M]inimal requirements are not tantamount to nonexistent requirements. The threshold may be low, but it is real -- and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation. The court need not conjure up unpled allegations or contrive elaborately arcane scripts in order to carry the blushing bride through the portal.

*Steele v. Ritz*, No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *4 (Tenn. Ct. App. Dec. 16, 2009) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir. 1988)). Indeed, the Tennessee Supreme Court has recognized that despite the liberal pleading standard set forth in Tennessee Rule of Civil

Procedure 8.01 "'[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint.'" *Trau–Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002) (quoting *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977)).

*Moses v. Dirghangi*, 430 S.W.3d 371, 378 (Tenn. Ct. App. 2013).

In *Nashboro Golf Course, LLC v. Townhomes of Nashboro Vill., L.P.*, No. M2017-00226-COA-R3-CV, 2018 WL 4382073, at *2 (Tenn. Ct. App. Sept. 14, 2018), this Court considered an argument regarding a claim for unjust enrichment when the claim "was not included in the complaint as a separate cause of action" and the "only mention of a claim of unjust enrichment was in the prayer for relief." The plaintiff "did not allege the elements of unjust enrichment" but yet the prayer for relief requested "compensatory damages arising from trespass, negligence, intentional or negligent interference with use of easement, intentional misrepresentation, negligent misrepresentation, slander and/or libel of title, and unjust enrichment[.]" *Id.* at *2-3. On appeal, we concluded that "the claim was not properly pled" or sufficiently raised before the trial court. *Id.* at *3. Therefore, any issue regarding a claim of unjust enrichment was waived on appeal. *Id.*

Given that the Smiths' petition only mentioned a claim for intentional infliction of emotional distress in its prayer for relief, we conclude that the Smiths did not spell out a claim for intentional infliction of emotional distress in their complaint, and this Court is under no duty to create one. As such, the circuit court properly held that the claim was subject to dismissal for failure to state a claim.

### F.    Attorney Fees

The final issues relate to attorney fees. The appellees ask this Court to remand this action to the circuit court to determine the amount of attorney fees to be awarded pursuant to Tennessee Code Annotated section 20-12-119(c)(3). The Smiths' only argument in response is that their claims were not subject to dismissal. Because we have affirmed the dismissal of the Smiths' claims, this argument has no merit. We remand for the determination of attorney fees.

### IV.   CONCLUSION

For the aforementioned reasons, the decision of the circuit court is affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellants, D. Smith, Jr., D. Smith, Sr., and P. Smith, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE